# EXHIBIT C

# 1986_3_3_Fed Reg



# federal register

Monday
March 3, 1986

## Part VI

## Department of the Interior

Bureau of Land Management

43 CFR Part 4700
Revision of Existing Regulations on Protection, Management, and Control of Wild Free-Roaming Horses and Burros; Final Rule

# DEPARTMENT OF THE INTERIOR

## Bureau of Land Management

### 43 CFR Part 4700

[Circular No. 2577]

### Revision of Existing Regulations on Protection, Management, and Control of Wild Free-Roaming Horses and Burros

**AGENCY:** Bureau of Land Management, Interior.

**ACTION:** Final rulemaking.

**SUMMARY:** This final rulemaking revises the provisions on wild free-roaming horses and burros in Part 4700 to reduce the regulatory burden on the public, to clarify the management procedures of the Bureau of Land Management as they affect the public, to remove unnecessary provisions, and to improve the organization of the regulations.

**EFFECTIVE DATE:** April 2, 1986.

**ADDRESS:** Inquiries or suggestions should be sent to: Director (250), Bureau of Land Management, Room 901, Premier Building, Department of the Interior, Washington, DC 20240.

**FOR FURTHER INFORMATION CONTACT:** John S. Boyles (202) 653-9215.

**SUPPLEMENTARY INFORMATION:** A proposed rulemaking to revise the existing regulations on the protection, managment, and control of wild free-roaming horses and burros on public lands was published in the Federal Register on December 18, 1984 (49 FR 49252). Comments were invited for a period of 60 days ending February 19, 1985, during which period a total of 19 comments were received, with 10 from associations, 6 from Federal agency offices, 2 from State governments, and 1 from a Member of Congress. All of the comments have been given careful consideration during the decisionmaking process on this final rulemaking.

The comments contained discussions of specific sections of the proposed rulemaking and in many instances recommended changes, some of which have been adopted in this final rulemaking. This preamble will discuss only those sections that were the subject of specific comments or were changed.

*Section 4700.0-2 Objectives.*

One comment suggested that the objectives should be amended to conform more closely to the statutory objectives stated in the Act of December 15, 1971, as amended (16 U.S.C. 1331–1340) (the Act). Based on this comment, the section has been amended to incorporate the statutory requirement that wild horses and burros be managed "as an integral part of the natural system of the public lands" under the principle of multiple use.

*Section 4700.0-5 Definitions.*

Several comments addressed the proposed definitions of the terms "appropriate management level" and "excess animals." Most of the comments criticized the proposed definitions of the terms as being inconsistent with the statutory definitions and intent, and urged that the statutory language be used. In response to these comments, the definitions of both terms have been removed from the final rulemaking. The language of the statute will govern management.

One comment questioned whether the definition of "authorized officer" allows for appeals by the public to higher authority. The definition merely defines who is to carry out the provisions of this rulemaking, and has no bearing on appeals under the Administrative Procedure Act or 43 CFR Part 4 of any decision made under these regulations. The definition is not changed in the final rulemaking.

Two comments addressed the definitions for "band" and "herd", urging that the former be removed and that the latter be conformed to the language in the Act. In response to these comments, the definitions of both terms have been removed from the rulemaking. "Herd" is defined in the Act. "Band" is not used in the text of the final rulemaking, and thus does not require definition.

Several comments addressed the definition of "commercial exploitation," urging that it be expanded to include slaughtering and processing the remains of horses and burros, and not be limited to using the wild characteristics of the animals for financial gain. Slaughtering a wild horse or burro is prohibited by § 4770.1(c) of this relemaking, and selling a wild horse or burro or its remains is prohibited by § 4770.1(d). Processing of the remains of a wild horse or burro is addressed in § 4730.2, which prohibits receiving compensation for remains, but allows disposal of remains through rendering. The definition is retained unchanged.

Several comments objected to the proposed definition of "humane treatment," which required that handling be consistent with "standard animal husbandry practices." Because no specific group of husbandry practices can be presented as a "standard," the word has been replaced in the final rulemaking with the phrase "accepted by the veterinary community." Accepted animal husbandry practices are those outlined in textbooks on the subject. The BLM has relied primarily on the following:

1. Bradley, Melvin. *Horses: A Practical and Scientific Approach*. New York: McGraw-Hill, Inc., 1981.
2. Ensminger, M.E. *Horses and Horsemanship*, 5th ed. Danville, Illinois: The Interstate Printers and Publishers, Inc., 1977.

In addition, the adjectives "kind" and "merciful" have been removed because they are redundant, given the requirement that handling not cause unnecessary stress or suffering.

Another comment stated that "stress," referred to in the definition, is undefined. In this and all other cases where common words or expressions are used, the ordinary dictionary definition is intended to be applied.

Several comments addressed the definition of "inhumane treatment." Some stated a preference for the definition in the existing regulations; others stated that requiring the treatment to be intentional is too restrictive, and that it should be defined to include inflicting pain and suffering. The word "death" has been replaced in the definition in the final rulemaking with "undue suffering", in response to one of the comments, and to allow the authorized officer to destroy animals in appropriate circumstances. The definition has also been expanded to include negligent as well as intentional behavior, and the word "standard" is replaced for the reasons stated above. However, the definition in the existing regulations is not retained because it may be too restrictive, in that it includes a specific list of proscribed acts or omissions without stating clearly that other acts or omissions may constitute inhumane treatment.

One comment suggested that the definition of "old wild horse or burro" should be amended to make it clear that, to be subject to destruction as an act of mercy because of physical deterioration, the animal's deterioration must have rendered it unable to fend for itself. This suggestion has been adopted in the final rulemaking.

One comment stated that the definition of "wild horses and burros" should be amended to include their progeny. This change has not been adopted in the final rulemaking because it would include animals born after their mothers have been placed under a Private Maintenance and Care Agreement. Such animals have never been "unbranded or unclaimed horses and burros on public lands of the United States," the statutory definition of wild horses and burros. The final rulemaking

does address progeny born while the mothers are on public land or at adoption centers. In response to a comment, the definition has been amended to assure that the term includes the characteristic "free-roaming".

One comment suggested including in the rulemaking a definition for "herd area." This suggestion has been adopted in the final rulemaking. Two comments urged that a definition of "malicious harassment" be included. This request has not been adopted in the final rulemaking. Instead, the prohibition in § 4770.1(a) has been amended to prohibit negligent as well as malicious injury or harassment. The terms negligence and malice are both well-defined in the law.

*Section 4700.0–6 Policy.*

Several comments addressed paragraph (a) of this section, urging that the policy should emphasize that wild horses and burros should be managed as one of the multiple uses of the public lands, not as a dominant use limited only by the capacity of the habitat. Other comments urged that more than just museum-exhibit populations should be maintained on the public lands. Paragraph (a) of § 4700.0–6 has been amended in the final rulemaking to accommodate both suggestions, that is, to require that populations be self-sustaining and that populations of horses and burros be kept in balance with other uses as well as the productive capacity of the habitat.

Several comments addressed paragraph (b) of this section, urging that the language on forage allocation in the existing regulations (43 CFR 4700.0–6(c)) be retained. Other comments stated that the word "comparably" is vague and should be replaced by "equivalent" in describing how wild horses and burros will be considered in relation to other resources in formulating land use plans. Specific provision for forage allocation is not necessary because the policy is clearly stated that wild horse and burro management will maintain self-sustaining populations. This cannot be done without adequate forage. The word "comparably" is used in the existing regulations to require all resource values to be considered in proportion to their presence on the land, competition with other resources, and the interest of the public in them. Assigning equal or equivalent weight to all resources, as some comments suggested, would not allow varying circumstances to be treated appropriately. The paragraph is not changed in the final rulemaking.

Two comments addressed paragraph (c) of this section, urging that it be policy to manage wild horses and burros at the minimum feasible level, and expressing concern that maintaining free-roaming behavior of the animals may be inconsistent with multiple use of the public lands. Failure to maintain the free-roaming nature of the animals would be contrary to the policy established by the Act. The requirement that management shall be at the minimum level to attain planning objectives is contained in § 4710.4. It is not necessary to amend this provision.

One comment urged that paragraph (d) of this section be amended to preclude cooperative arrangements for the management of wild horses and burros. The Act specifically authorizes the Secretary of the Interior to enter into cooperative agreements with State and local governments and with individual landowners to attain management objectives. The paragraph is retained in the final rulemaking. It should be understood that § 4710.7 retains the statutory provisions for individuals to maintain wild horses and burros on their private land.

Although there were no comments on paragaph (e), it has been amended by removing the word "nationwide" in reference to adoption centers, to avoid misleading the public into expecting to find adoptable animals in every community around the country.

In response to several comments, and to make it consistent with § 4750.4–2(b), paragraph (f) has been amended to state that adoption fees will "normally" be required.

One comment asked for a policy declaration on removal of animals from private land. Such a declaration is unnecessary because the procedure is clearly stated in § 4720.2–1. Another comment asked that management guidelines be included in the policy statement. Such guidelines are more appropriately stated in manuals for the use of field personnel of the Bureau. Neither suggestion has been adopted in the final rulemaking.

*Section 4710.1 Land use planning.*

Several comments addressed this section. One expressed general support, another asked for language requiring that management activities comply with law and Congressional intent, and a third urged that management activities be included in approved land use plans. In response to the second comment, management activities shall be in accordance with the law regardless of any criteria in regulations. In response to the third, the paragraph has been amended by substituting the words "in accordance" for "compatible" in describing the relationship of management actions to land use plans. Management activities, including the development of herd management area plans, must not only be compatible with the land use plan but must also reflect specific guidance derivable from the land use plan on the subjects of resource allocation, relationships between wild horses and burros and other recognized uses, and critical resource use levels that would require modification of the plan's multiple-use prescriptions.

*Section 4710.2 Inventory and monitoring.*

Several comments urged that the authorized officer be required to address the numbers of horses and burros that existed in herd areas in 1971 as a basis for further management. This suggestion is not adopted in the final rulemaking. There is no indication in the Act or its legislative history that herds should be managed at their 1971 size or any other specific level. Furthermore, although estimates of 1971 population levels have been made, they are at best conjectural and highly unreliable. It is more appropriate to allow the authorized officer the flexibility to determine appropriate management levels based on analysis of competing land uses, forage availability, and public concern.

Another comment urged that the authorized officer be required to monitor herd and habitat characteristics regardless of whether herd management areas are established. This suggestion has not been adopted in the final rulemaking, because this type of information is useful only when herds are to be managed in the long term. This provision has been amended to delete the list of items to be inventoried and monitored on herd management areas, because these will vary depending on the objectives in the herd management area plan.

*Section 4710.3–1 Herd management areas.*

Several comments addressed this section, expressing concern that it could be interpreted to direct every District Manager of the Bureau of Land Management to establish herd management areas. This provision has been amended to alleviate this concern and to clarify that herd management areas shall be established only where herds existed in 1971. One comment suggested that the effect on nearby private land of management for wild horses and burros should be taken into account in delineating herd management areas. This suggestion has been adopted in the final rulemaking.

*Section 4710.3–2 Wild horse and burro ranges.*

Several comments objected to this section as implying that numerous wild horse and burro ranges will be

established on public lands. Such ranges are specifically provided for by law (16 U.S.C. 1333(a)), and will be established only upon completion of the appropriate planning process, including public participation. The section has been retained, with editorial changes, in the final rulemaking.

*Section 4710.4   Constraints on management.*

Several comments addressed this section, pointing out that limiting wild horses and burros to their 1971 "yearlong" habitat could effectively eliminate most of their actual habitat from management as herd areas, due to their seasonal use of some areas. The section has been amended to remove the reference to yearlong habitat. In this connection, a definition has been added for "herd area" in § 4700.0–5. Another change has been incorporated to make it clear that management will not be restricted to herd areas, but will rather be undertaken with the objective of limiting animal distribution to herd areas by controlling herd size to prevent habitat from being overpopulated.

*Section 4710.5   Closure to livestock grazing.*

Numerous comments addressed paragraph (a) of this section, either opposing it as inconsistent with multiple use management, or urging that it be amended to provide additional protection for wild horses and burros. Actions under this section are discretionary with the authorized officer and subject to public consultation. The provision is necessary to allow the authorized officer to meet the needs of all users of the public lands, including wild horses and burros, and is retained unamended in the final rulemaking.

Several comments asked that paragraph (b) of this section be amended to allow camp horses or riding stock to graze on public lands inhabited by wild horses and burros. The paragraph has been amended to make it clear that herd areas are closed only to grazing under permit or lease by domestic horses and burros, and not to pack or camp horses. In addition, for the latter it is the normal practice that outfitters carry fodder for their animals with them, or limit their grazing by tying or hobbling them, so interference by these animals with or consumption of forage needed by wild horses and burros is minimal.

As a result of concerns expressed in numerous comments, paragraph (c) of this section has been rewritten in the final rulemaking to clarify the limits on the authority of the authorized officer. Sufficient authorities for this provision are found in the Taylor Grazing Act and the Federal Land Policy and Management Act, as well as the Wild Free-Roaming Horse and Burro Act. Any notice of closure will be subject to the normal administrative appeal process.

*Section 4710.6   Removal of unauthorized livestock in or near areas occupied by wild horses or burros.*

In response to public comment, this section has been amended to make it clear that any conditions established for the removal of unauthorized livestock would apply only to removal from public lands.

*Section 4710.7   Maintenance of wild horses and burros on privately controlled lands.*

This section has been amended to remove the requirement that private maintenance occur only on unfenced land, because that requirement is not supported by law. Landowners may voluntarily provide for and maintain wild horses and burros that freely move onto their land, whether it is fenced or not.

*Section 4720.1   Removal.*

One comment discussed the term "current information" in this section, and suggested that detailed language in the statute at 16 U.S.C. 1333(b)(2) be included in the regulation. The authorized officer is equally bound by the statute and the regulations, and there is no need to repeat the requirements of the law in the regulations. The comment is not adopted in the final rulemaking.

An editorial change has been made in § 4720.1(b), adding the word "humanely" to meet the requirements of law.

Three comments addressed paragraph (c) of this section, 2 of them urging that it be removed from the rulemaking, and 1 asking that a time limit be set for holding captured animals. Section 1333(b)(2)(C) of the Act requires the humane destruction of excess wild horses and burros. Even if the section were removed from the rulemaking, the responsibility to carry out the law would remain. Retaining the paragraph in the rulemaking makes it clear that the Secretary may impose standards for humane destruction of excess animals. Setting a time limit on holding captured animals would deprive the authorized officer of flexibility needed to meet various circumstances, such as temporary lulls in adoption demand.

*Section 4720.2–1   Removal of strayed animals from private lands.*

Several comments addressed this section, stating that the information requested from private landowners seeking removal of strayed animals from their land was too burdensome and should be supplied only in the discretion of the landowner. However, it would be impossible for the authorized officer to be responsive to a request for removal of strayed animals without specific information about the number of animals involved, their location and that of the private lands, and the dates the animals were observed. Requiring this information would enable the authorized officer to determine the appropriate agency action and to assign to each individual request its appropriate priority. Therefore, the final rulemaking makes the content of such requests mandatory by replacing the word "should" with "shall." Other comments urged that the regulation require immediate or priority removal of strayed animals. The comments are not adopted in the final rulemaking, because circumstances may make such action impossible. Requiring that removal be accomplished as soon as practicable commits the Bureau to expeditious removal of strayed animals.

*Section 4720.2–2   Removal of excess animals from private lands.*

One comment stated that the authorized officer should not be required to obtain written permission from the owners of unimproved private lands intermingled with public lands in herd areas when removing excess animals. This comment has been adopted in the final rulemaking by removing the phrase "or using". A sentence has been added to make it clear that flying aircraft over a parcel of land does not constitute entry.

*Section 4730.1   Destruction.*

Several comments addressed this section, observing both the Congressional intent that destruction be a tool for managing wild horses and burros, and the legislatively drawn distinction between destruction of excess animals and destruction of old, sick, and lame animals as an act of mercy. The section has been rewritten in the final rulemaking to conform to the statute in these respects.

*Section 4730.2   Disposal of remains.*

Several comments addressed this section, some urging that it prohibit processing of remains, and others that some provision be made for compensating individuals for disposal of remains. Neither suggestion has been adopted in the final rulemaking. To provide consistency with the Act, and to remove the ambiguity between the words "carcasses" and "remains", the former has been replaced with the latter wherever it appeared. Processing remains is the most appropriate way of disposing of them and complies with the law so long as neither the Bureau nor any individual receives compensation for conveying the remains. Although no compensation can be received for

transfer of the remains, once the remains have been sanitarily rendered in accordance with normal local or State standards, the renderer may sell the end products, which are no longer considered remains as used in the Act.

In response to one comment, the section has been amended to make it clear that the Bureau is not required to dispose of remains of animals that die on the open public range.

*Section 4740.1  Use of motor vehicles or aircraft.*

This section has been amended to reflect numerous comments stating generally that management activities should be conducted in a humane manner, and to clarify that a public hearing shall be held before using helicopters or motor vehicles in the management of wild horses and burros.

*Section 4740.2  Standards for vehicles used for transport of wild horses and burros.*

Two comments urged that this section be amended to provide specific standards for head room in horse trailers and to require that food given to animals in transit be compatible with what they are accustomed to. Such specificity is unnecessary in these regulations. Bureau personnel are trained to judge whether trailers are suitable for transporting individual animals, and allowing feed rations to change while remaining adequate may help adopted animals adjust to their new environments.

*Section 4750.2-1  Health and identification requirements.*

One comment suggested that verification of an animal's soundness and health, required in paragraph (a) of this section, should be obtained from a licensed veterinarian. This recommendation would eliminate the possibility of obtaining a verification from other qualified individuals. Another comment recommended that the provision for tests, immunizations, and worming be removed from the rulemaking because they are not required by Federal law. These tests may not be required by Federal law, but are required by the laws of many of the public land States. Neither recommendation has been adopted in the final rulemaking.

One comment sought the removal of the provision in paragraph (c) for freeze-marking unweaned foals, because of possible stress on the young animals and because of doubt as to their status as free-roaming if born after their dams have been rounded up. This comment has not been adopted in the final rulemaking. Foals born in captivity but before their dams are adopted into private maintenance are considered free-roaming for purposes of these regulations. Also, while freeze-marking may involve some stress, it is the most humane and cost-efficient way of providing the necessary identification of these animals.

*Section 4750.3-1  Application for private maintenance of wild horses and burros.*

Several comments urged that the provision for a nonrefundable filing fee to accompany the application be removed from the regulations, on the grounds that imposing a fee would tend to discourage adoptions. The recommendation is adopted in the final rulemaking.

*Section 4750.3-2  Qualification standards for private maintenance.*

One comment address paragraph (a)(1) of this section, asking that legal age be determined by where an applicant is a citizen or permanent resident. To avoid the confusion inherent in making this kind of determination, the provision has been amended in the final rulemaking to require only that the applicant be at least 18 years old.

One comment requested that the rulemaking state the minimum acceptable standards for facilities for animals in private maintenance. Paragraph (a)(3) has been rewritten to state those standards.

*Section 4750.3-3  Supporting information and certification for private maintenance of more than 4 wild horses and burros.*

The opening paragraph of § 4750.3-3(a) has been rewritten for purposes of clarification and stricter compliance with the judicial settlement in *American Horse Protection Association, Inc., et al v. Watt, et al* (the AHPA settlement). The amendment makes it clear that the facilities must be physically inspected by a person determined by the authorized officer to be qualified.

Paragraph (a)(1) of this section has been amended to cross-refer to the standards contained in the previous section, in order to make clear the responsibilities of those seeking to adopt more than 4 horses or burros. Paragraph (b) has been rewritten to be more consistent with the AHPA settlement. In the final rulemaking this paragraph makes it clear that the required information is to be provided by holders of powers of attorney to adopt animals on behalf of members of a group.

*Section 4750.4-1  Private Maintenance and Care Agreement.*

Paragraphs (b), (c), and (d) of this section have been removed in the final rulemaking, and the remaining paragraphs redesignated, to eliminate duplication between the provisions stated in the agreement required by this section and the acts prohibited in § 4770.1.

One comment suggested that paragraph (e) of the proposed rulemaking be amended to prohibit long-term or indefinite as well as permanent transfers of adopted animals without prior approval by the authorized officer. This comment has been adopted in the final rulemaking in paragraph (b) by imposing a 30-day limit on transfers without such prior approval.

One comment suggested that adopters be given a definite time within which an animal must be made available for inspection after written request by the authorized office under paragraph (f). This recommendation has been adopted in the final rulemaking by imposing a 7-day deadline.

Two comments suggested that paragraph (g) of the proposed rulemaking ((d) in this final rulemaking) be amended to require a veterinarian's certificate in all cases of the death of an adopted animal. This suggestion has not been adopted in the final rulemaking, but it remains within the discretion of the authorized officer to require such a certificate.

One comment requested more specificity in paragraph (h) of this section in the proposed rulemaking. In response, the paragraph has been amended to make it clear that it is the adopter's financial responsibility to care for animals covered by the Private Maintenance and Care Agreement. New paragraphs have been added to clarify that the adopter is responsible for managing adopted animals, for damages cause by them, for rounding up strays, and for disposal of dead animals. In response to a comment, a requirement has been added that the adopter notify the authorized office of any change of address.

*Section 4750.4-2  Adoption fee.*

Paragraph (a) of this section has been amended in the final rulemaking to conform to the amendment of § 4750.3-1, which removed the application fee. An editorial change has also been made to make it clear that only unweaned foals are not subject to the adoption fee.

*Section 4750.4-3  Request to terminate Private Maintenance and Care Agreement.*

In response to a comment, this section has been amended to clarify that adopted animals may be transferred directly to a new adopter, with the approval of the authorized officer, and that the officer need not take physical possession of animals involved in such transfers.

*Section 4750.4-4  Replacement animals.*

One comment from a Bureau field office suggested shortening from 60 to 10 days the period within which an adopter can obtain an animal to replace one that has died or had to be destroyed due to a condition that existed at the time of adoption. This suggestion was not adopted. Instead, because some conditions that may cause death after a 60-day period may have existed at the time of adoption, this section has been amended to extend the time to 6 months.

*Section 4750.5  Application for title to wild horses and burros.*

Several comments objected to the provision in paragraph (a) of this section allowing adopters to acquire title to more than 4 animals in one year as not being supported by section 1333(c) of the Act. The provision has been removed in the final rulemaking.

One comment requested that paragraph (b) of this section be amended to state in some detail the required contents of the veterinarian's statement to be supplied by the applicant for title. In response to this comment, the word "humane" has been inserted in front of "treatment," so that the required certification will incorporate the elements listed in the definition (§ 4700.0-5(g)) of "human treatment," i.e., handling compatible with standard animal husbandry practices.

Another change has been made in the final rulemaking affecting title application. Application for title has been incorporated in the adoption process so that an adopter applies for title to an animal automatically at the time the Private Maintenance and Care Agreement is signed. The final sentence of the paragraph has been removed as redundant.

*Section 4760  Compliance with the Private Maintenance and Care Agreement.*

A new paragraph (b) has been added to this section to conform it to the terms of the settlement in *American Horse Protection Association v. Watt.* Paragraph (b) requires the authorized officer to verify compliance with the Private Maintenance and Care Agreement when one adopter has acquired 25 or more animals, or 25 or more are maintained in one place.

One comment pointed out that paragraph (b) of this section in the proposed rulemaking (relettered (c) in the final rulemaking), when read in conjunction with § 4750.4-1(f), requires the authorized officer investigating a complaint about the care, treatment, or use of an adopted animal to notify the adopter in writing before inspecting the animal or the facilities where it is maintained. This is a correct statement of the requirement, which is not changed in the final rulemaking. However, the authorized officer may enlist the assistance of Federal or local law enforcement authorities, who may with proper cause obtain a search warrant and investigate without such warning.

*Section 4770.1  Prohibited acts.*

One comment stated that paragraph (a) of this section demonstrates the need for a definition of "malicious harassment," and another stated that the prohibition in this paragraph would be very hard to enforce because of the difficulty of proving malicious intent. The paragraph has been amended to prohibit negligent as well as malicious injury of a wild horse or burro.

The separate prohibition against using a wild horse or burro for bucking stock has been removed from the final rulemaking. Any use considered to be inhumane is already prohibited in § 4770.1(e), and use that takes advantage of an animal's characteristic of wildness is prohibited in § 4770.1(e).

A paragraph has been added to this section prohibiting the violation of orders, terms, or conditions established by the authorized officer. Other changes of an editorial nature have been made.

*Section 4770.2  Civil penalties*

In response to several comments that this section singled out holders of grazing permits for discriminatory treatment, paragraph (a) of this section has been amended to apply to all permittees or lessees on the pubic lands.

The principal author of this final rulemaking is John S. Boyles, Division of Wild Horses and Burros, assisted by the staff of the Office of Legislation and Regulatory Management, Bureau of Land Management.

It is hereby determined that this rulemaking does not constitute a major Federal action significantly affecting the quality of the human environment and that no detailed statement pursuant to section 102(2)(C) of the National Environmental Policy Act of 1969 (42 U.S.C. 4332(2)(C)) is required.

The Department of the Interior has determined that this document is not a major rule under Executive Order 12291 and that it will not have a significant economic effect on a substantial number of small entities under the Regulatory Flexibility Act (5 U.S.C. 601 et seq.). A limited number of veterinarians, cooperative extension agents, and humane officials may be insignificantly affected by the rulemaking. The certification required for adopters to receive title is needed on a nonrecurring basis. The changes allow adopters discretion to choose the official from whom they obtain a certification, resulting in some cost savings. Adopters are required to pay a fee to obtain the animals and to provide information to show their ability to provide humane transport, facilities, and care for the animals. An insignificant number of individuals may be deterred from participating because of the fee or qualification standards for humane care.

Information collection requirements for administering these regulations have been approved by the Office of Management and Budget and assigned clearance number 1004-0042.

**List of Subjects in 43 CFR Part 4700**

Advisory committees, Aircraft, Intergovernmental relations, Penalties, Public lands, Range management, Wild horses and burros, Wildlife.

Under the provisions of the Act of September 8, 1959 (18 U.S.C. 47), the Act of December 15, 1971, as amended (16 U.S.C. 1331-1340), the Federal Land Policy and Management Act of 1976 (43 U.S.C. 1701 et seq.), and the Act of June 28, 1934, as amended (43 U.S.C. 315), Part 4700, Subchapter D, Chapter II, Title 43 of the Code of Federal Regulations is revised to read as set forth below.

Dated: February 7, 1986.

J. Steven Griles,
*Assistant Secretary of the Interior.*

### GROUP 4700—WILD FREE-ROAMING HORSE AND BURRO MANAGEMENT

Note.—The information collection requirements contained in Group 4700 have been approved by the Office of Management and Budget and assigned clearance number 1004-0042. The information is being collected to permit the authorized officer to remove wild horses and burros from private land and to determine whether an application for adoption of and title to wild horses or burros should be granted. Responses are required to obtain benefits.

### PART 4700—PROTECTION, MANAGEMENT, AND CONTROL OF WILD FREE-ROAMING HORSES AND BURROS

**Subpart 4700—General**

Sec.
4700.0-1  Purpose.
4700.0-2  Objectives.
4700.0-3  Authority.
4700.0-5  Definitions.
4700.0-6  Policy.

**Subpart 4710—Management Considerations**

4710.1  Land use planning.
4710.2  Inventory and monitoring.
4710.3  Management areas.
4710.3-1  Herd management areas.
4710.3-2  Wild horse and burro ranges.
4710.4  Constraints on managment.

Sec.
4710.5  Closure to livestock grazing.
4710.6  Removal of unauthorized livestock in or near areas occupied by wild horses or burros.
4710.7  Maintenance of wild horses and burros on privately controlled lands.

**Subpart 4720—Removal**

4720.1  Removal of excess animals from public lands.
4720.2  Removal of strayed or excess animals from private lands.
4720.2-1  Removal of strayed animals from private lands.
4720.2-2  Removal of excess animals from private lands.

**Subpart 4730—Destruction of Wild Horses or Burros and Disposal of Remains**

4730.1  Destruction.
4730.2  Disposal of remains.

**Subpart 4740—Motor Vehicles and Aircraft**

4740.1  Use of motor vehicles or aircraft.
4740.2  Standards for vehicles used for transport of wild horses and burros.

**Subpart 4750—Private Maintenance**

4750.1  Private maintenance.
4750.2  Health, identification, and inspection requirements.
4750.2-1  Health and identification requirements.
4750.2-2  Brand inspection.
4750.3  Application requirement for private maintenance.
4750.3-1  Application for private maintenance of wild horses and burros.
4750.3-2  Qualification standards for private maintenance.
4750.3-3  Supporting information and certification for private maintenance of more than 4 wild horses or burros.
4750.3-4  Approval or disapproval of applications.
4750.4  Private maintenance of wild horses and burros.
4750.4-1  Private maintenance and care agreement.
4750.4-2  Adoption fee.
4750.4-3  Request to terminate private maintenance and care agreement.
4750.4-4  Replacement animals.
4750.5  Application for title to wild horses and burros.

**Subpart 4760—Compliance**

4760.1  Compliance with the Private Maintenance and Care Agreement.

**Subpart 4770—Prohibited Acts, Administrative Remedies, and Penalties**

4770.1  Prohibited acts.
4770.2  Civil penalties.
4770.3  Administrative remedies.
4770.4  Arrest.
4770.5  Criminal penalties.

Authority: Act of Dec. 15, 1971, as amended (16 U.S.C. 1331–1340), Act of Oct. 21, 1976 (43 U.S.C. 1701 et seq.), Act of Sept. 8, 1959 (18 U.S.C. 47), Act of June 28, 1934 (43 U.S.C. 315).

**Subpart 4700—General**

§ 4700.0-1  Purpose.

The purpose of these regulations is to implement the laws relating to the protection, management, and control of wild horses and burros under the administration of the Bureau of Land Management.

§ 4700.0-2  Objectives.

The objectives of these regulations are management of wild horses and burros as an integral part of the natural system of the public lands under the principle of multiple use; protection of wild horses and burros from unauthorized capture, branding, harassment or death; and humane care and treatment of wild horses and burros.

§ 4700.0-3  Authority.

The Act of September 8, 1959 (18 U.S.C. 47); the Act of December 15, 1971, as amended (16 U.S.C. 1331–1340); the Federal Land Policy and Management Act of 1976 (43 U.S.C. 1711, 1712, and 1734); the Act of June 28, 1934, as amended (43 U.S.C. 315); and the National Environmental Policy Act of 1969 (42 U.S.C. 4321, 4331–4335, and 4341–4347).

§ 4700.0-5  Definitions.

As used in this part, the term:

(a) "Act" means the Act of December 15, 1971, as amended (16 U.S.C. 1331–1340), commonly referred to as the Wild Free-Roaming Horse and Burro Act.

(b) "Authorized officer" means any employee of the Bureau of Land Management to whom has been delegated the authority to perform the duties described herein.

(c) "Commercial exploitation" means using a wild horse or burro because of its characteristics of wildness for direct or indirect financial gain. Characteristics of wildness include the rebellious and feisty nature of such animals and their defiance of man as exhibited in their undomesticated and untamed state. Use as saddle or pack stock and other uses that require domestication of the animal are not commercial exploitation of the animals because of their characteristics of wildness.

(d) "Herd area" means the geographic area identified as having been used by a herd as its habitat in 1971.

(e) "Humane treatment" means handling compatible with animal husbandry practices accepted in the veterinary community, without causing unnecessary stress or suffering to a wild horse or burro.

(f) "Inhumane treatment" means any intentional or negligent action or failure to act that causes stress, injury, or undue suffering to a wild horse or burro and is not compatible with animal husbandry practices accepted in the veterinary community.

(g) "Lame wild horse or burro" means a wild horse or burro with one or more malfunctioning limbs that permanently impair its freedom of movement.

(h) "Old wild horse or burro" means a wild horse or burro characterized because of age by its physical deterioration and inability to fend for itself, suffering, or closeness to death.

(i) "Private maintenance" means the provision of proper care and humane treatment to excess wild horses and burros by qualified individuals under the terms and conditions specified in a Private Maintenance and Care Agreement.

(j) "Public lands" means any lands or interests in lands administered by the Secretary of the Interior through the Bureau of Land Management.

(k) "Sick wild horse or burro" means a wild horse or burro with failing health, infirmity or disease from which there is little chance of recovery.

(l) "Wild horses and burros" means all unbranded and unclaimed horses and burros that use public lands as all or part of their habitat, or that have been removed from these lands by the authorized officer but have not lost their status under section 3 of the Act. Where it appears in this part the term "wild horses and burros" is deemed to include the term "free-roaming".

§ 4700.0-6  Policy.

(a) Wild horses and burros shall be managed as self-sustaining populations of healthy animals in balance with other uses and the productive capacity of their habitat.

(b) Wild horses and burros shall be considered comparably with other resource values in the formulation of land use plans.

(c) Management activities affecting wild horses and burros shall be undertaken with the goal of maintaining free-roaming behavior.

(d) In administering these regulations, the authorized officer shall consult with Federal and State wildlife agencies and all other affected interests, to involve them in planning for and management of wild horses and burros on the public lands.

(e) Healthy excess wild horses and burros for which an adoption demand by qualified individuals exists shall be made available at adoption centers for private maintenance and care.

(f) Fees shall normally be required from qualified individuals adopting

excess wild horses and burros to defray part of the costs of the adoption program.

## Subpart 4710—Management Considerations

### § 4710.1 Land use planning.

Management activities affecting wild horses and burros, including the establishment of herd management areas, shall be in accordance with approved land use plans prepared pursuant to Part 1600 of this title.

### § 4710.2 Inventory and monitoring.

The authorized officer shall maintain a record of the herd areas that existed in 1971, and a current inventory of the numbers of animals and their areas of use. When herd management areas are established, the authorized officer shall also inventory and monitor herd and habitat characteristics.

### § 4710.3 Management areas.

### § 4710.3-1 Herd management areas.

Herd management areas shall be established for the maintenance of wild horse and burro herds. In delineating each herd management area, the authorized officer shall consider the appropriate management level for the herd, the habitat requirements of the animals, the relationships with other uses of the public and adjacent private lands, and the constraints contained in § 4710.4. The authorized officer shall prepare a herd management area plan, which may cover one or more herd management areas.

### § 4710.3-2 Wild horse and burro ranges.

Herd management areas may also be designated as wild horse or burro ranges to be managed principally, but not necessarily exclusively, for wild horse or burro herds.

### § 4710.4 Constraints on management.

Management of wild horses and burros shall be undertaken with the objective of limiting the animals' distribution to herd areas. Management shall be at the minimum level necessary to attain the objectives identified in approved land use plans and herd management area plans.

### § 4710.5 Closure to livestock grazing.

(a) If necessary to provide habitat for wild horses or burros, to implement herd management actions, or to protect wild horses or burros, to implement herd management actions, or to protect wild horses or burros from disease, harassment or injury, the authorized officer may close appropriate areas of the public lands to grazing use by all or a particular kind of livestock.

(b) All public lands inhabited by wild horses or burros shall be closed to grazing under permit or lease by domestic horses and burros.

(c) Closure may be termporary or permanent. After appropriate public consultation, a Notice of Closure shall be issued to affected and interested parties.

### § 4710.6 Removal of unauthorized livestock in or near areas occupied by wild horses or burros.

The authorized officer may establish conditions for the removal of unauthorized livestock from public lands adjacent to or within areas occupied by wild horses or burros to prevent undue harassment of the wild horses or burros. Liability and compensation for damages from unauthorized use shall be determined in accordance with subpart 4150 of this title.

### § 4710.7 Maintenance of wild horses and burros on privately controlled lands

Individuals controlling lands within areas occupied by wild horses and burros may allow wild horses or burros to use these lands. Individuals who maintain wild free-roaming horses and burros on their land shall notify the authorized officer and shall supply a reasonable estimate of the number of such animals so maintained. Individuals shall not remove or entice will horses or burros from the public lands.

## Subpart 4720—Removal

### § 4720.1 Removal of excess animals from public lands.

Upon examination of current information and a determination by the authorized officer that an excess of wild horses or burros exists, the authorized officer shall remove the excess animals immediately in the following order.

(a) Old, sick, or lame animals shall be destroyed in accordance with Subpart 4730 of this title;

(b) Additional excess animals for which an adoption demand by qualified individuals exists shall be humanely captured and made available for private maintenance in accordance with Subpart 4750 of this title; and

(c) Remaining excess animals for which no adoption demand by qualified individuals exists shall be destroyed in accordance with subpart 4730 of this title.

### § 4720.2 Removal of strayed or excess animals from private lands.

### § 4720.2-1 Removal of strayed animals from private lands.

Upon written request from the private landowner to any representative of the Bureau of Land Management, the authorized officer shall remove stray wild horses and burros from private lands as soon as practicable. The private landowner may also submit the written request to a Federal marshal, who shall notify the authorized officer. The request shall indicate the numbers of wild horses or burros, the date(s) the animals were on the land, legal description of the private land, and any special conditions that should be considered in the gathering plan.

### § 4720.2-2 Removal of excess animals from private lands.

If the authorized officer determines that proper management requires the removal of wild horses and burros from areas that include private lands, the authorized officer shall obtain the written consent of the private owner before entering such lands. Flying aircraft over lands does not constitute entry.

## Subpart 4730—Destruction of Wild Horses or Burros and Disposal of Remains

### § 4730.1 Destruction.

Except as an act of mercy, no wild horse or burro shall be destroyed without the authorization of the authorized officer. Old, sick, or lame animals shall be destroyed in the most humane manner possible. Excess animals for which adoption demand does not exist shall be destroyed in the most humane and cost efficient manner possible.

### § 4730.2 Disposal of remains.

Remains of wild horses or burros that die after capture shall be disposed of in accordance with State or local sanitation laws. No compensation of any kind shall be received by any agency or individual disposing of remains. The products of rendering are not considered remains.

## Subpart 4740—Motor Vehicles and Aircraft

### § 4740.1 Use of motor vehicles or aircraft.

(a) Motor vehicles and aircraft may be used by the authorized officer in all phases of the administration of the Act, except that no motor vehicle or aircraft, other than helicopters, shall be used for the purpose of herding or chasing wild horses or burros for capture or

destruction. All such use shall be conducted in a humane manner.

(b) Before using helicopters or motor vehicles in the management of wild horses or burros, the authorized officer shall conduct a public hearing in the area where such use is to be made.

### § 4740.2 Standards for vehicles used for transport of wild horses and burros.

(a) Use of motor vehicles for transport of wild horses or burros shall be in accordance with appropriate local, State and Federal laws and regulations applicable to the humane transportation of horses and burros, and shall include, but not be limited to, the following standards:

(1) The interior of enclosures shall be free from protrusion that could injure animals;

(2) Equipment shall be in safe conditions and of sufficient strength to withstand the rigors of transportation;

(3) Enclosures shall have ample head room to allow animals to stand normally;

(4) Enclosures for transporting two or more animals shall have partitions to separate them by age and sex as deemed necessary by the authorized officer;

(5) Floors of enclosures shall be covered with nonskid material;

(6) Enclosures shall be adequately ventilated and offer sufficient protection to animals from inclement weather and temperature extremes; and

(7) Unless otherwise approved by the authorized officer, transportation shall be limited in sequence to a maximum of 24 hours followed by a minimum of 5 hours of on-the-ground rest with adequate feed and water.

(b) The authorized officer shall not load wild horses or burros if he/she determines that the vehicle to be used for transporting the wild horses or burros is not satisfactory for that purpose.

## Subpart 4750—Private Maintenance

### § 4750.1 Private maintenance.

The authorized officer shall make available for private maintenance all healthy excess wild horses or burros for which an adoption demand by qualified individuals exists.

### § 4750.2 Health, identification, and inspection requirements.

### § 4750.2-1 Health and identification requirements.

(a) An individual determined to be qualified by the authorized officer shall verify each excess animal's soundness and good health, determine its age and sex, and administer immunizations, worming compounds, and tests for communicable diseases.

(b) Documentation conforming compliance with State health inspection and immunization requirements for each wild horse or burro shall be provided to each adopter by the authorized officer.

(c) Each animal offered for private maintenance, including orphan and unweaned foals, shall be individually identified by the authorized officer with a permanent freeze mark of alpha numeric symbols on the left side of its neck. The freeze mark identifies the animal as Federal property subject to the provisions of the Act and these regulations by a patented symbol, the animal's year of birth, and its individual identification number. The authorized officer shall record the freeze mark on the documentation of health and immunizations. For purposes of this subpart, a freeze mark applied by the authorized officer is not considered a brand.

### § 4750.2-2 Brand inspection.

The authorized officer shall make arrangements on behalf of an adopter for State inspection of brands, where applicable, of each animal to be transported across the State where the adoption center is located. The adopter shall be responsible for obtaining inspections for brands required by other States to or through which the animal may be transported.

### § 4750.3 Application requirements for private maintenance.

### § 4750.3-1 Application for private maintenance of wild horses and burros.

An individual applying for a wild horse or burro shall file an application with the Bureau of Land Management on a form approved by the Director.

### § 4750.3-2 Qualification standards for private maintenance.

(a) To qualify to receive a wild horse or burro for private maintenance, an individual shall:

(1) Be 18 years of age or older;

(2) Have no prior conviction for inhumane treatment of animals or for violation of the Act or these regulations;

(3) Have adequate feed, water, and facilities to provide humane care to the number of animals requested. Facilities shall be in safe condition and of sufficient strength and design to contain the animals. The following standards apply:

(i) A minimum space of 144 square feet shall be provided for each animal maintained, if exercised daily; otherwise, a minimum of 400 square feet shall be provided for each animal;

(ii) Until fence broken, adult horses shall be maintained in an enclosure at least 6 feet high; burros in an enclosure at least 4½ feet high; and horses less than 18 months old in an enclosure at least 5 feet high. Materials shall be protrusion-free and shall not include large-mesh woven or barbed wire;

(iii) Shelter shall be available to mitigate the effects of inclement weather and temperature extremes. The authorized officer may require that the shelter be a structure, which shall be well-drained and adequately ventilated;

(iv) Feed and water shall be adequate to meet the nutritional requirements of the animals, based on their age, physiological condition and level of activity; and

(4) Have obtained no more than 4 wild horses and burros within the preceding 12-month period, unless specifically authorized in writing by the authorized officer.

(b) The authorized officer shall determine an individual's qualifications based upon information provided in the application form required by § 4750.3-1 of this subpart and Bureau of Land Management records of any previous private maintenance by the individual under the Act.

### § 4750.3-3 Supporting information and certification for private maintenance of more than 4 wild horses or burros.

(a) An individual applying for more than 4 wild horses or burros within a 12-month period, or an individual or group of individuals requesting to maintain more than 4 wild horses or burros at a single location shall provide a written report prepared by the authorized officer, or by a local humane official, veterinarian, cooperative extension agent, or similarly qualified person approved by the authorized officer, verifying that the applicant's facilities have been inspected appear adequate to care for the number of animals requested, and satisfy the requirements contained in § 4750.3-2(a).

(1) The report shall include a description of the facilities, including corral sizes, pasture size, and shelter, barn, or stall dimensions, and shall note any discrepancies between the facilities inspected and representations made in the application form.

(2) When an applicant requests 25 or more animals or when 25 or more animals will be maintained at any single location regardless of the number of applicants, the facilities for maintaining the adopted animals shall be inspected by the authorized officer prior to approving the application.

(b) Any individual or group represented by a power of attorney and applying for more than 4 animals shall provide the following:

(1) A summary of the age, sex, and number of wild free-roaming horses or burros requested by species;

(2) Requested adoption date and center location;

(3) If applicable, names, addresses and telephone numbers of all applicants represented by a power of attorney submitted with the request;

(4) A transportation plan that describes the transport vehicle and any rest-stops;

(5) A distribution plan for delivering the animals to their assigned adopters;

(6) Names, addresses, and a concise summary of the experience of the individuals who will handle the adopted animals during transportation and distribution; and

(7) When the adopted animals will be maintained at a single location or where the applicants have been solicited by the holder of their power of attorney, a concise statement outlining the arrangements, including duties and responsibilities of the parties, for maintaining the animals.

§ 4750.3-4  Approval or disapproval of applications.

If an application is approved, the authorized officer shall offer the individual an opportunity to select the appropriate number, sex, age and species of animals from those available. If the authorized officer disapproves an application for private maintenance because the applicant lacks adequate facilities or transport, the individual may correct the shortcoming and file a new application.

§ 4750.4  Private maintenance of wild horses and burros.

§ 4750.4-1  Private Maintenance and Care Agreement.

To obtain a wild horse or burro, a qualified applicant shall execute a Private Maintenance and Care Agreement and agree to abide by its terms and conditions, including but not limited to the following:

(a) Title to wild horses and burros covered by the agreement shall remain in the Federal Government for at least 1 year after the Private Maintenance and Care Agreement is executed and until a Certificate of Title is issued by the authorized officer;

(b) Wild horses and burros covered by the agreement shall not be transferred for more than 30 days to another location or to the care of another individual without the prior approval of the authorized officer;

(c) Wild horses and burros covered by the agreement shall be made available for physical inspection within 7 days of receipt of a written request by the authorized officer;

(d) The authorized officer shall be notified within 7 days of discovery of the death, theft or escape of wild horses and burros covered by the agreement;

(e) Adopters are financially responsible for the proper care and treatment of all wild horses and burros covered by the agreement.

(f) Adopters are responsible, as provided by State law, for any personal injury, property damage, or death caused by animals in their care; for pursing animals that escape or stray; and for costs of recapture.

(g) Adopters shall notify the authorized officer within 30 days of any change in the adopter's address; and

(h) Adopters shall dispose of remains in accordance with applicable sanitation laws.

§ 4750.4-2  Adoption fee.

(a) An individual obtaining wild horses and burros shall pay the Bureau of Land Management an adoption fee of $125 per horse and $75 per burro, except that no fee shall be paid for unweaned foals.

(b) The Director may adjust or waive the adoption fee on determining that wild horses or burros in the custody of the Bureau of Land Management are unadoptable when the full adoption fee is required, and that it is in the public interest to adjust or waive the adoption fee stated in paragraph (a) of this section. The adjustment or waiver shall extend only to those persons who are willing to maintain such animals privately, who demonstrate the ability to care for them properly, and who agree to comply with all rules and regulations relating to wild horses and burros.

§ 4750.4-3  Request to terminate Private Maintenance and Care Agreement.

An adopter may request to terminate his/her responsibility for an adopted animal by submitting a written relinquishment of the Private Maintenance and Care Agreement for that animal. The authorized officer shall arrange to transfer the animal to another qualified applicant or take possession of the animal at a location specified by the authorized officer within 30 days of receipt of the written request for relinquishment.

§ 4750.4-4  Replacement animals.

The authorized officer shall replace an animal, upon request by the adopter, if (a) within 6 months of the execution of the Private Maintenance and Care Agreement the animal dies or is required to be destroyed due to a condition that existed at the time of placement with the adopter; and (b) the adopter provides, within a reasonable time, a statement by a veterinarian certifying that reasonable care and treatment would not have corrected the condition. Transportation of the replacement animal shall be the responsibility of the adopter.

§ 4750.5  Application for title to wild horses and burros.

(a) The adopter shall apply for title, using a form designated by the Director, upon signing the Private Maintenance and Care Agreement.

(b) The authorized officer shall issue a Certificate of Title after 12 months, if the adopter has complied with the terms and conditions of the agreement and the authorized officer determines, based either on a field inspection or a statement provided by the adopter from a veterinarian, extension agent, local humane official, or other individual acceptable to the authorized officer, that the animal or animals covered by the Agreement have received proper care and humane treatment.

(c) An adopter may not obtain title to more than 4 animals per 12-month period of private maintenance. Effective the date of issuance of the Certificate of Title, Federal ownership of the wild horse or burro ceases and the animal loses its status as a wild horse or burro and is no longer under the protection of the Act or regulations under this title.

Subpart 4760—Compliance

§ 4760.1  Compliance with the Private Maintenance and Care Agreement.

(a) An adopter shall comply with the terms and conditions of the Private Maintenance and Care Agreement and these regulations. The authorized officer may verify compliance by visits to an adopter, physical inspections of the animals, and inspections of the facilities and conditions in which the animals are being maintained. The authorized officer may authorize a cooperative extension agent, local humane official or similarly qualified individual to verify compliance.

(b) The authorized officer shall verify compliance with the terms of the Private Maintenance and Care Agreement when an adopter has received 25 or more animals or when 25 or more animals are maintained at a single location.

(c) The authorized officer shall conduct an investigation when a complaint concerning the care, treatment, or use of a wild horse or

burro is received by the Bureau of Land Management.

(d) The authorized officer may require, as a condition for continuation of a Private Maintenance and Care Agreement, that an adopter take specific corrective actions if the authorized officer determines that an animal is not receiving proper care or is being maintained in unsatisfactory conditions. The adopter shall be given reasonable time to complete the required corrective actions.

## Subpart 4770—Prohibited Acts, Administrative Remedies, and Penalties

### § 4770.1  Prohibited acts.

The following acts are prohibited:
(a) Maliciously or negligently injuring or harassing a wild horse or burro;
(b) Removing or attempting to remove a wild horse or burro from the public lands without authorization from the authorized officer;
(c) Destroying a wild horse or burro without authorization from the authorized officer except as an act of mercy;
(d) Selling or attempting to sell, directly or indirectly, a wild horse or burro or its remains;
(e) Commercially exploiting a wild horse or burro;
(f) Treating a wild horse or burro inhumanely;
(g) Violating a term or condition of the Private Maintenance and Care Agreement;
(h) Branding a wild horse or burro;
(i) Removing or altering a freeze mark on a wild horse or burro;
(j) Violating an order, term, or condition established by the authorized officer under this part.

### § 4770.2  Civil penalties.

(a) A permittee or lessee who has been convicted of any of the prohibited acts found in § 4770.1 of this title may be subject to suspension or cancellation of the permit or lease.

(b) An adopter's failure to comply with the terms and conditions of the Private Maintenance and Care Agreement may result in the cancellation of the agreement, repossession of wild horses and burros included in the agreement and disapproval of requests by the adopted for additional excess wild horses and burros.

### § 4770.3  Administrative remedies.

Any person who is adversely affected by a decision of the authorized officer in the administration of these regulations may file an appeal in accordance with 43 CFR 4.4 within 30 days of receipt of the written decision.

### § 4770.4  Arrest.

The Director of the Bureau of Land Management may authorize an employee who witnesses a violation of the Act or these regulations to arrest without warrant any person committing the violation, and to take the person immediately for examination or trial before an officer or court of competent jurisdiction. Any employee so authorized shall have power to execute any warrant or other process issued by an officer or court of competent jurisdiction to enforce the provisions of the Act or these regulations.

### § 4770.5  Criminal penalties.

Any person who commits any act prohibited in § 4770.1 of these regulations shall be subject to a fine of not more than $2,000 or imprisonment for not more than 1 year, or both, for each violation. Any person so charged with such violation by the authorized officer may be tried and sentenced by a United States Commissioner or magistrate, designated for that purpose by the court by which he/she was appointed, in the same manner and subject to the same conditions as provided in 18 U.S.C. 3401.

[FR Doc. 86-4532 Filed 2-28-86; 8:45 am]
BILLING CODE 4310-84-M