DANIELLE M. HOLT
(Nevada Bar No. 13152)
DE CASTROVERDE LAW GROUP
1149 S Maryland Pkwy
Las Vegas, NV 89104
Ph (702) 222-9999
Fax (702) 383-8741
danielle@decastroverdelaw.com

JESSICA L. BLOME
(Cal. Bar No. 314898, admitted pro hac vice)
GREENFIRE LAW, PC
2748 Adeline Street, Suite A
Berkeley, CA 94703
(510) 900-9502
jblome@greenfirelaw.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| ANIMAL WELLNESS ACTION, a non-profit corporation, CANA FOUNDATION, a non-profit corporation, THE CENTER FOR A HUMANE ECONOMY, a non-profit corporation, LAURA LEIGH, individually, and WILD HORSE EDUCATION, a non-profit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF INTERIOR, BUREAU OF LAND MANAGEMENT, and JON RABY, Nevada State Director of the Bureau of Land Management, and the<br><br>Defendants. | Case No. 3:22-cv-00034<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>Complaint Filed: January 21, 2021 |

**Table of Contents**

I. INTRODUCTION ................................................................................................................. 5

II. ARGUMENT ........................................................................................................................ 6

   A.   Management of Wild Horses Requires Consideration of HMAPs .................................... 6

      1.   Defendants' Opposition is Based on Inapposite Caselaw ............................................. 7

      2.   Defendants' Opposition is Based on a Strained Interpretation of BLM Regulations ... 10

   B.   BLM Unlawfully Withheld and Unreasonably Delayed Creating an HMAP ................... 12

   C.   Plaintiffs Do Not Challenge the BLM Handbook as a Final Agency Action ................... 15

   D.   BLM's Gather-EA is Not the Same as an HMAP ............................................................ 15

   E.   Defendants Did Not Take a "Hard Look" at the Consequences of Its Gather Plan .......... 17

III. CONCLUSION ................................................................................................................... 17

# Table of Authorities

### Cases

*Accardi v. Shaughnessy*, 347 U.S. 260 (1954).................................................................. 12
*Am. Horse Prot. Ass'n, Inc. v. Frizzell*, 403 F. Supp. 1206 (D. Nev. 1975) ................................. 10
*Am. Horse Prot. Ass'n v. Watt*, 694 F.2d 1310 (D.C. Cir. 1982)............................................... 10
*Animal Prot. Inst. of Am.*, 109 IBLA 112 (1989) .......................................................... 7, 8
*Associated Builders & Contractors of Tex. Gulf Coast, Inc. v. United States Dep't of Energy*,
    451 F. Supp. 281 (S.D. Tex. 1978)................................................................. 12, 16
*Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166 (9th Cir. 2002).................................... 12, 14
*Brower v. Evans*, 257 F.3d 1058 (9th Cir. 2001) ............................................................... 14
*Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142 (2012) ............................................. 15
*Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946 (9th Cir. 2013) ........................ 11
*Cloud Found. v. U.S. Bureau of Land Mgmt.*,
    No. 3:11-CV-00459-HDM, 2013 WL 1249814 (D. Nev. Mar. 26, 2013) ............................. 10
*Friends of Animals v. Pendley*, 523 F. Supp. 3d 39 (D.D.C. 2021).......................................... 7, 9
*Friends of Animals v. Silvey*, 353 F. Supp. 3d 991 (D. Nev. 2018).......................................... 7
*Friends of Animals v. United States Bureau of Land Mgmt.*,
    548 F. Supp. 3d 39 (D.D.C. 2021)..................................................................... 7, 9
*In Def. of Animals v. U.S. Dep't of Interior*, 751 F.3d 1054 (9th Cir. 2014) ............................... 10
*In re A Cmty. Voice*, 878 F.3d 779 (9th Cir. 2017)........................................................... 13
*In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413 (D.C. Cir. 2004) ................................... 13
*In re Bluewater Network*, 234 F.3d 1305 (D.C. Cir. 2000) ................................................... 14
*In re Int'l Chem. Workers Union*, 958 F.2d 1144 (D.C. Cir. 1992)......................................... 14
*In re Pesticide Action Network*, 798 F.3d 809 (9th Cir. 2015) ............................................. 13
*Indep. Min. Co. v. Babbitt*, 885 F. Supp. 1356 (D. Nev. 1995) ........................................ 13, 14
*Marbury v. Madison,* 5 U.S. 137 (1803)............................................................................ 8
*Marsh v. Or. Nat. Res. Council*, 490 U.S. 360 (1989)......................................................... 17
*Nat'l Cable Television Ass'n, Inc. v. Am. Cinema Eds.*, Inc.,
    937 F.2d 1572 (Fed. Cir. 1991) ........................................................................... 7
*Pac. Molasses Co. v. Fed. Trade Com.*, 356 F.2d 386 (5th Cir. 1966)........................... 5, 12, 16
*R.J. Reynolds Tobacco Co. v. Cnty. of L.A.*, 29 F.4th 542 (9th Cir. 2022) .............................. 11
*Service v. Dulles*, 354 U.S. 363 (1957).................................................................. 5, 12
*Telecommunications Research & Action v. FCC (TRAC)*,
    242 U.S. App. D.C. 222 (D. C. Cir. 1984)............................................................. 12
*United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) ....................................... 5
*United States v. Nixon*, 418 U.S. 683 (1974) ................................................................... 5
*W. Rangeland Conservation Ass'n v. Zinke*, 265 F. Supp. 3d 1267 (D. Utah 2017) .................. 10
*Webster v. Fall*, 266 U.S. 507 (1925) ............................................................................. 7
*Williams v. Hanover Hous. Auth.*, 871 F. Supp. 527 (D. Mass. 1994). ..................................... 15

### Statutes

16 U.S.C. §1331.................................................................................................. 6
**16 U.S.C. §1333(b)**.......................................................................................... 16
16 U.S.C. 1333(a). .............................................................................................. 6
42 U.S.C. §4332(E)............................................................................................ 17
5 U.S.C. §706(1)................................................................................................ 12

## Regulations

40 C.F.R. §1508.9 ............................................................................................................................. 17
43 C.F.R. §4700.0-3 ........................................................................................................................... 6
43 C.F.R. §4710.3-1 .................................................................................................................. passim
43 C.F.R. §4710.4 ..................................................................................................................... passim
43 C.F.R. §4710.4. .............................................................................................................................. 5

## I. Introduction

Plaintiffs' Motion for Summary Judgment established that BLM has a mandatory, non-discretionary duty to prepare a herd management area plan (HMAP) prior to engaging in management activities, including the gather and removal of wild horses. This conclusion is supported by the wording and legislative history of 43 C.F.R. §§4710.3-1 and 4710.4, <u>regulations promulgated by BLM to act as constraints on their management authority</u>. *See* Pls.' Motion at pp. 15:25-22:23. Defendants oppose Plaintiffs' motion by focusing on caselaw and arguments that wholly fail to address this wording and legislative history.

BLM's regulations establish that HMAPs must be created before the agency engages in any management activities to ensure that "[m]anagement shall be at the minimum level necessary." 43 C.F.R. §4710.4. When an administrative agency promulgates regulations, these regulations "must be scrupulously observed." *Pac. Molasses Co. v. Fed. Trade Com.*, 356 F.2d 386, 389 (5th Cir. 1966) (citing *Service v. Dulles*, 354 U.S. 363 (1957)). This is so even where the regulations limit the agency's discretion beyond that required by statute. *See United States v. Nixon*, 418 U.S. 683, 695-96 (1974); *Service*, 354 U.S. at 387-388; *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265-268 (1954). Where an agency violates such regulations, "any action taken as a result . . . cannot stand." *Pac. Molasses Co.*, 356 F.2d at 390.

While BLM may wish it had not promulgated the at-issue regulations, it is nevertheless bound by them, and absent court intervention, BLM plainly has no intention of complying with them.

Plaintiffs' Motion for Summary Judgment also challenged BLM's Gather-EA because it failed to comply with NEPA. In response, BLM erroneously argues that it took the required "hard look" in its analysis and considered all reasonable alternatives. BLM ignores the specific arguments raised by Plaintiffs, skirting issues determinative of Plaintiffs' Motion. The Court should enter summary judgment in favor of Plaintiffs on all counts.

## II. Argument

### A. Management of Wild Horses Requires Consideration of HMAPs

The Wild Free-Roaming Horses and Burros Act (WHA) provides BLM with authority to manage wild horses on public lands, which management includes removal operations. *See* 16 U.S.C. §1331 *et seq.*; 43 C.F.R. §4700.0-3. "All management activities shall be at the minimal feasible level." 16 U.S.C. 1333(a).

To implement the WHA, including its provision for management at minimally feasible levels, BLM adopted regulations that mandate the creation of both herd management areas and HMAPs. *See* 43 C.F.R. §§4710.3-1 and 4710. Specifically, Section 4710.3-1 mandates BLM to create herd management areas (HMAs) for the "maintenance of wild horse and burro herds." In creating these HMAs, BLM "shall consider . . . the constraints contained in §4710.4." *See id.* at §4710.3-1. Further, BLM "shall" prepare HMAPs for these HMAs. *Id.*

Section 4710.3-1 does not, in and of itself, expressly identify a timeframe by which HMAPs must be created. For that, the section directs the reader to Section 4710.4. *See id.* Section 4710.4 (entitled "Constraints on management") provides that management activities "*shall* be at the minimum level necessary to attain the objectives identified in approved land use plans *and* herd management area plans." *Id.* at §4710.4 (emphasis added).

Thus, reading both sections together, it is clear that BLM must consider both land use plans and HMAPs prior to delineating any HMAs and prior to engaging in management activities for these HMAs.

In their opposition to Plaintiffs' Motion for Summary Judgment, Defendants concede that Section 4710.3-1 "generally requires that an HMAP be created" but deny that "the regulations provide a time period in which BLM must create an HMAP." Defs.' Motion at pp. 9:25, 15:2-3. As addressed below, their position relies upon unpersuasive, inapposite caselaw, as well as a strained interpretation of the wording contained within Section 4710.4. Moreover, Defendants completely ignore the legislative history of BLM's implementing regulations.

1. Defendants' Opposition is Based on Inapposite Caselaw

Defendants assert that multiple courts have found it unnecessary for BLM to prepare an HMAP prior to gather operations, citing *Friends of Animals v. Silvey*, 353 F. Supp. 3d 991, 1009 (D. Nev. 2018); *Animal Prot. Inst. of Am.*, 109 IBLA 112 (1989), *Friends of Animals v. Pendley*, 523 F. Supp. 3d 39 (D.D.C. 2021), and *Friends of Animals v. United States Bureau of Land Mgmt.*, 548 F. Supp. 3d 39 (D.D.C. 2021). This is incorrect. None of these cases address Section 4710.4 or the regulatory history of BLM's regulations. No mention is made of the tools of statutory construction that were argued (if they were). Only one of the three cases, *Animal Prot. Inst. of Am.*, even considers the issue of temporality, and then without addressing Section 4710.4. As such, they have no precedential value. *See Webster v. Fall*, 266 U.S. 507, 511 (1925) ("[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents"); *Nat'l Cable Television Ass'n, Inc. v. Am. Cinema Eds.*, Inc., 937 F.2d 1572, 1581 (Fed. Cir. 1991) ("[w]hen an issue is not argued or is ignored in a decision, such decision is not precedent to be followed in a subsequent case in which the issue arises").

In *Friends of Animals*, the appellants argued that a gather plan violated the WHA's requirement that management occur at the minimal feasible level. *See Friends of Animals*, 353 F. Supp. 3d at 1008. Because this claim had not been raised in the complaint, the court dismissed it. *See id.* In dicta, the court stated that 16 U.S.C. §1333(a) could be reasonably interpreted to mean that "BLM shall use '[t]he minimum number of habitat or population management tools or actions necessary to attain the objectives' for an HMA." The court was not asked to consider whether BLM complied with its implementing regulations, which (as Plaintiffs have argued in this case) establish that at a minimum, BLM shall consider land use plans and HMAPs. *See* 43 C.F.R. §4710.4.

*Animal Prot. Inst. of Am.* is an Interior Board of Land Appeals opinion that addressed a challenge to four BLM decisions approving gather plans. *See Animal Prot. Inst. of Am.*, 109 IBLA at 112-113. Appellants put forth several arguments, and the vast majority of the opinion

focused on whether BLM's method for establishing AMLs was consistent with 16 U.S.C. §1333(b)'s requirement that removal of horses be necessary to achieve and maintain a thriving natural ecological balance on public lands. *See id.* at 114-126 (finding most AMLs had not been properly established). One paragraph addresses HMAPs:

> Finally, API contends that BLM should not be permitted to proceed with removal of wild horses from the HMA/WHTs involved herein until it has prepared an HMAP in each case. We note that 43 CFR 4710.3-1 requires preparation of an HMAP. BLM and/or the Forest Service has prepared HMAPs only with respect to the Miller Flat and Nevada Wild Horse Range HMAs, Monte Cristo HMA/WHT, and Cherry Springs WHT. No HMAPs have been prepared in the case of the other HMA/WHTs involved herein. We conclude that it is not necessary that BLM prepare an HMAP as a basis for ordering the removal of wild horses, so long as the record otherwise substantiates compliance with the statute. Indeed, 43 CFR 4710.3-1 does not require preparation of an HMAP as a prerequisite for a removal action. Thus, we are not persuaded that preparation of an HMAP must in all cases precede the removal of wild horses from an HMA/WHT, and decline to order preparation of HMAPs.

*See id.* at 127.

Unlike the *Animal Protection Institute*, Plaintiffs aver that Defendants are in violation of Section 4710.4 because BLM has not prepared a single HMAP for any of the HMAs or the Complex of HMAs at issue in this litigation. Plaintiffs may agree that Section 4710.3-1—on its own—does not expressly require preparation of an HMAP as a prerequisite for a removal action. Instead, Section 4710.3-1 requires that in creating HMAs for the maintenance of wild horses, BLM "shall consider . . . the constraints contained in § 4710.4." *See id.* at §4710.3-1. Section 4710.4 mandates that HMAPs be consulted before engaging in HMA management activities, which include decisions to remove wild horses from public lands. Because the *Animal Prot. Inst. of Am.* opinion does not address this section of BLM regulations, the paragraph's conclusion regarding HMAPs is not controlling. Moreover, IBLA decisions are not controlling on this Court, so a single IBLA decision from decades ago bears no weight in this case, which Plaintiffs bring to a tribunal with oversight authority over the actions of administrative agencies per Article III of the United States Constitution. *Marbury v. Madison,* 5 U.S. 137 (1803).

Reply in Support of Plaintiffs' Motion for Summary Judgment    8

Defendants assert that *Friends of Animals v. Pendley* and *Friends of Animals v. United States Bureau of Land Mgmt.* accord with the *Animal Prot. Inst. of Am.* insofar as they note that BLM may consider a number of different materials in managing HMAs. *See* Defs. Motion at p. 10:4-14. Again, these cases do not address Section 4710.4, and so, their rulings are unpersuasive.

HMAPs are barely addressed in *Friends of Animals v. Pendley* – only in a footnote. *See Friends of Animals*, 523 F. Supp. at 56 n.3. In that case, the plaintiff made a "passing argument" that a BLM instruction memorandum, which amended the agency's Wild Horse and Burro Management Handbook, departed from an HMAP created for the Twin Peaks HMA. *Id.* The court noted the instruction memorandum was a non-binding document, and regardless, it was not persuaded that the memorandum diverged from the HMAP. *See id.* Also, the court stated "[m]oreover, the record indicates that the provisions of the 1989 HMAP upon which Plaintiff relies have been superseded by a 2008 resource management plan." *Id.* There was no discussion of BLM's regulations. Plaintiffs were not arguing that HMAPs must be created prior to removal actions. The court's opinion simply is not on point.

Plaintiffs in *Friends of Animals v. United States Bureau of Land Mgmt.* made a number of challenges to a removal plan that was issued in 2018. *See Friends of Animals*, 548 F. Supp. 3d at 46, 49-50. Among these challenges, plaintiffs made a series of arguments alleging that BLM's actions improperly departed from past agency policy and practice. *See id.* at 65-67. One such argument was that a proposed roundup in 2021 could not be "reconciled with the overall procedures for wild horse management as explained in BLM's handbook." *Id.* at 67. This argument was not properly before the court because plaintiffs had not brought suit to challenge the proposed roundup, but instead, the lawsuit was a facial challenge of the Friends of Animals v. United States Bureau of Land Mgmt., 548 F. Supp. 3d 39 (D.D.C. 2021)2018 actions. *See id.* at 56, 67. Nonetheless, in dicta, the court noted that the handbook's procedures provide BLM "considerable flexibility in choosing which types of plans to use" to manage HMAs. *Id.* at 67. Again, this case is inapposite, providing no analysis of BLM's regulations. Plaintiffs were not arguing that the 2018 plan was invalid because an HMAP had not first been created.

1     In addition to these cases, Defendants cite to cases for the general proposition that courts recognize BLM has discretion under the WHA regarding decisions involving the removal of excess horses from public lands, citing to *W. Rangeland Conservation Ass'n v. Zinke*, 265 F. Supp. 3d 1267, 1282 (D. Utah 2017); *In Def. of Animals v. U.S. Dep't of Interior*, 751 F.3d 1054, 1064 (9th Cir. 2014); *Cloud Found. v. U.S. Bureau of Land Mgmt.*, No. 3:11-CV-00459-HDM, 2013 WL 1249814 at *5 (D. Nev. Mar. 26, 2013), *In Def. of Animals v. U.S. Dep't of Interior*, 909 F. Supp. 2d 1178, 1189 (E.D. Cal. 2012), *Am. Horse Prot. Ass'n, Inc. v. Frizzell*, 403 F. Supp. 1206, 1217 (D. Nev. 1975), *Am. Horse Prot. Ass'n v. Watt*, 694 F.2d 1310, 1317-1318 (D.C. Cir. 1982). These decisions, and the arguments made within, do not mention or address HMAPs or the issues raised by Plaintiffs in their Motion for Summary Judgment. Each merely notes that aspects of 16 U.S.C. §1333 afford BLM some discretionary authority. Plaintiffs do not disagree with this general proposition, but it is irrelevant. BLM chose to adopt regulations that limit its discretion – and these cases do not address this limitation.

Moreover, Defendants ignore Plaintiffs' reference to *Nat'l Cable Television Ass'n, Inc.* for the proposition that "[w]hen an issue is not argued or is ignored in a decision, such decision is not precedent to be followed in a subsequent case in which the issue arises." Instead, they appear to think that any case is "directly on point" so long as HMAPs or Section 1333 are in any way referenced. This is simply not so. Analysis of Section 4710.4 is critical to Plaintiff's motion and in establishing BLM's duty as to HMAPs.

To be clear, Plaintiffs' motion addresses an issue of first impression that has not previously been brought before this Court or, to Plaintiffs' knowledge, to any court. It is for this reason that Plaintiffs spent considerable time addressing the wording and legislative history of BLM's implementing regulations.

    2. <u>Defendants' Opposition is Based on a Strained Interpretation of BLM Regulations</u>

Section 4710.3-1 provides, in full:

Herd management areas shall be established for the maintenance of wild horse and burro herds. In delineating each herd management area, the authorized officer shall consider the

appropriate management level for the herd, the habitat requirements of the animals, the relationships with other uses of the public and adjacent private lands, and the constraints contained in § 4710.4. The authorized officer shall prepare a herd management area plan, which may cover one or more herd management areas.

43 C.F.R. §4710.3-1. Defendants state that the first two sentences "require[] HMAs be established for the maintenance of wild horse herds and lists information BLM must consider in doing so." Defs.' Motion at p. 14:19-25. However, these first two sentences "exist separate from the general mandate [in the third sentence] that BLM create HMAPs." *Id.* At first glance, this might appear to be the case, but only if you ignore that among the information BLM must consider in "delineating each" HMA are "the constraints contained in §4710.4" (to wit, consideration of the objectives contained in land use plans *and* HMAPs). 43 C.F.R. §4710.3-1; *see also* 43 C.F.R. §4710.4. Defendants ignore this connection between Sections 4710.-1 and 4710.4.

As regards the wording of Section 4710.4, Defendants focus on the term "approved," arguing that this regulation "does not mandate the creation and approval of new plans; it only pertains to previously approved plans, if they exist for the relevant area." Defs.' Motion at p. 14:14-18. In other words, if no land use plan or HMAP has been created, then Section 4710.4 is utterly and completely without effect. This position not only ignores the legislative history of the regulations, but it also requires the Court to engage in a strained interpretation of the regulations. Statutory interpretation should not render regulatory provisions as superfluous. *See R.J. Reynolds Tobacco Co. v. Cnty. of L.A.*, 29 F.4th 542, 559 (9th Cir. 2022); *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 965 (9th Cir. 2013).

Section 4710.4 is entitled "Constraints on management," but BLM ignores this. Section 4710.4 states that management activities "shall" be based on objectives in both land use plans "and" HMAPs, but BLM finds this wording meaningless. As regards the term "approved," BLM could read this as requiring the creation of approved plans and HMAPs, which would be consistent with the regulations' purpose of clarifying BLM's management procedures and constraining management. Instead, BLM posits that "approved" makes consideration of land use

plans and HMAPs optional. As addressed in Plaintiffs' initial brief, no *Auer* deference should be granted to this peculiar interpretation, which contradicts both the wording of the regulations and its legislative history. *See* Pls.' Motion at pp. 19:18-20:20.

Quite clearly, the regulations serve as a constraint on BLM's management of wild horses. Plaintiffs' opening briefing cited *Accardi v. Shaughnessy*, 347 U.S. 260 (1954) and *Service v. Dulles*, 354 U.S. 363 (1957) for the proposition that an agency's regulations can limit the discretion afforded it by Congress, imposing mandatory duties. *See* Pls.' Motion at pp. 21:21-22:23. BLM was not obligated to impose upon itself specific management procedures, but having done so through adoption of Sections 4710.3-1 and 4710.4, it cannot now proceed without regard to them. *See Service*, 354 U.S. at 388. This is so even if "the eventual outcome" after following the regulations is the same as that observed from failure to follow the regulations." *Associated Builders & Contractors of Tex. Gulf Coast, Inc. v. United States Dep't of Energy*, 451 F. Supp. 281, 287 (S.D. Tex. 1978); *see also Pac. Molasses Co.*, 356 F.2d at 389-90 (regulations "must be scrupulously observed[,] and where an agency violations its regulations, "any action taken as a result . . . cannot stand"). Defendants argue that *Accardi* and *Service* are inapplicable, but they do not analyze why this is so. Instead, they simply reiterate that the regulations do not bind them to create an HMAP before engaging in the removal of horses from public lands. *See* Defs.' Motion at pp. 16:13-21. This argument must necessarily fail.

**B.      BLM Unlawfully Withheld and Unreasonably Delayed Creating an HMAP**

Section 706(1) of the APA addresses agency action unlawfully withheld or unreasonably delayed. *See* 5 U.S.C. §706(1). Where a mandatory deadline exists, courts look at whether the action has been unlawfully withheld; where a discretionary deadline exists, courts look at whether the action has been unreasonably delayed. *See Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1177 n.11 (9th Cir. 2002). Analysis of whether an action is unreasonably delayed takes into consideration the TRAC factors elucidated in *Telecommunications Research & Action v. FCC (TRAC)*, 242 U.S. App. D.C. 222 (D. C. Cir. 1984).

As Plaintiffs have demonstrated, there is a mandatory duty to create an HMAP prior to engaging in management activities (including actions to remove horses from public lands), and as such, BLM's failure to create an HMAP constitutes an action unlawfully withheld. However, even if this Court were to instead consider the deadline discretionary, Section 706.1 has been violated because BLM's failure to create an HMAP has been unreasonably delayed. *See* Pls.' Motion at pp. 24:26-25:25.

Not only do Defendants erroneously argue that BLM's regulations fail to establish a mandatory deadline, but they also dispute that the regulations create a discretionary deadline. Defs.' Motion at p. 18:4-26. In examining whether an action was unreasonably delayed, Defendants note that judicial review is only appropriate where there is a "discrete" action that is "legally required." *Id.* at p. 18:21-26. But here, there is a discrete action, – the mandate to create an HMAP – which is legally required pursuant to BLM's implementing regulations.

Of note, Defendants cite to *Indep. Min. Co. v. Babbitt*, 885 F. Supp. 1356, 1364 (D. Nev. 1995), *aff'd sub nom. Indep. Min. Co.*, 105 F.3d 502. In that case, the District Court analyzed the TRAC factors for BLM action where no specific statutory or regulatory deadline was identified. *See Indep. Min. Co.*, 885 F. Supp. at 1364-65. Although its analysis ultimately ended in a finding that action had not been unreasonably delayed, the Court stated that where there is no specific deadline, under the first TRAC factor, an agency is "subject to a 'rule of reason' deadline," whereby "'reasonable' in this context, mean[s] 'expeditious.'" *Id.* at 1365. Section 4710.3-1 was adopted in 1986. *See* Pls. Motion at p. 18:18-21. Since then, BLM has refused to prepare an HMAP for any of the herd management areas within the Pancake Complex, despite being asked to do so. *See e.g.,* AR3184-86, 3382-86. Surely 37 years constitutes unreasonable delay per this "rule of reason." *See, e.g., In re A Cmty. Voice*, 878 F.3d 779, 783–84 (9th Cir. 2017) (eight-year delay unreasonable); *In re Pesticide Action Network*, 798 F.3d 809, 815 (9th Cir. 2015) (after eight years and without a "concrete timeline" for action, agency had "stretched the 'rule of reason' beyond its limits"); *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (agency's "six-year-plus delay is nothing less than egregious"); *In re Bluewater*

*Network*, 234 F.3d 1305, 1316 (D.C. Cir. 2000) (nine-year delay unreasonable); *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1150 (D.C. Cir. 1992) (six-year delay unreasonable). Moreover, as illustrated by the Fifteenmile HMAP, it is clear that BLM can create HMAPs. *See* Exhibit A to RJN. Despite this, Defendants offer no explanation for their refusal to so act.

Defendants next argue that even if the Court were to find that BLM had a duty with a discretionary deadline, thereby warranting application of the TRAC factors, it should find that there has been no unreasonable delay. *See* Defs.' Motion at pp. 19:1-20:13. This argument mistakenly is based on the presumption that the TRAC factors are applied to analyze whether an HMAP must have been created *prior* to removing excess horses from the range. *See id.* at n. 9. While it is true that the unlawfully withheld prong of Section 706(1) focuses on this, analysis under the unreasonably delayed prong does not. This is necessarily so because the unreasonably delayed prong is only addressed where no specific deadline exists. *See Biodiversity Legal Found.*, 309 F.3d at 1177 n.11. This does not mean, however, that the TRAC factor analysis occurs in a vacuum without consideration of future BLM gather operations. *See Brower v. Evans*, 257 F.3d 1058, 1068-70 (9th Cir. 2001).

      BLM's regulations provide that BLM "shall prepare a herd management area plan, which may cover one or more herd management areas." 43 C.F.R. §4710.3-1. If Section 4710.4 did not exist, and this sentence were read in isolation, then it would provide for a discretionary deadline subject to review of the TRAC factors. And, the rule of reason deadline, requiring BLM to prepare HMAPs expeditiously, would be applied. *See Indep. Min. Co.*, 885 F. Supp. at 1365. Again, Plaintiffs have demonstrated that BLM's refusal to create an HMAP prior to initiating removal of horses constitutes action unlawfully withheld. And, even if the Court finds BLM regulations merely provide a discretionary deadline, BLM's refusal to create an HMAP is action unreasonably delayed. Accordingly, Plaintiffs request that BLM be ordered to create an HMAP immediately and before any future gather operations occur.

### C. Plaintiffs Do Not Challenge the BLM Handbook as a Final Agency Action

Defendants' oppose Plaintiffs' Motion for Summary Judgment as regards the third and fourth causes of action by arguing that Plaintiffs cannot challenge the BLM Handbook as a final agency action. *See* Defs.' Motion at pp. 20:14-22:17. This argument is irrelevant because Plaintiffs are not seeking to have the Court hold unlawful or set aside the Handbook. The action being challenged is not the Handbook, but rather, BLM's removal of horses, predicated upon a Gather-EA, without first creating an HMAP. Plaintiffs' Motion for Summary Judgment references the Handbook only to the extent that BLM has relied upon it to interpret their HMAP duty as being discretionary. More specifically, Plaintiffs argue that the Handbook cannot alter BLM's mandatory duties under WHA's implementing regulations, and no *Auer* deference should be given to it. *See* Pls.' Motion at pp. 19:19-20:2, 21:13-29, 26:19-27:4, 29:18-21. The Handbook is not legally binding and cannot alter BLM's mandatory duties under WHA's implementing regulations. *See Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 154-56 (2012); *Williams v. Hanover Hous. Auth.*, 871 F. Supp. 527, 531 (D. Mass. 1994).

### D. BLM's Gather-EA is Not the Same as an HMAP

Defendants argue that the Gather-EA "states the management actions proposed are tools to achieve management objectives contained in approved land use plans." Defs.' Motion at pp. 21:1-3. These plans "contain numerous short and long-term objectives." *Id.* at 21:4. As a result, BLM did a "thorough analysis." *Id.* at p. 22:14. Further, they assert the public had ample opportunity to provide input on the scope of the Pancake Gather Plan. *See id.* at pp. 22:18-24:8. These arguments fail as they do not address Plaintiffs' arguments and evidence.

First, BLM's implementing regulations state that management actions should be achieved through objectives contained in approved land use plans *and* HMAPs. *See* 43 C.F.R. §§4710.3-1, 4710.4. BLM may not just consult one. It cannot pick and choose what the regulations mandate of it.

Second, to achieve management at the minimum feasible level, BLM has to *actually* tier its removal actions to the short- and long-term goals in both land use plans *and* HMAPs. HMAPs

were incorporated into the WHA's implementing regulations for a reason: to ensure that gather plans and other management activities are done at the minimum feasible level possible. 43 C.F.R. §4710.4. This is consistent with Congress' direction to the Department of the Interior, as stated in the WHA itself. 16 U.S.C. §1333(b). Removal actions are not to occur in a vacuum with Defendants' picking and choosing which HMA goals it should consider. Defendants appear to argue otherwise, noting that a Gather-EA need only focus on restoring a thriving natural ecological balance, regardless of whether long-term goals, such as those related to livestock management, might address that balance. *See* Defs.' Motion at p. 24:3-5. But, this is precisely the point that BLM seems to be missing! The Pancake Gather-EA is an action that does not achieve management at the minimum feasible level precisely because its scope is so narrow.

Third, Defendants argue that "even if an HMAP had been in existence at the time of the 2022 Gather," the concerns raised by the public would have been met with the same response. *See id.* Even if this were true, it does not allow BLM to ignore its mandatory duty to create an HMAP prior to approving removal actions. *See Associated Builders & Contractors of Tex. Gulf Coast, Inc.*, 451 F. Supp. at 287; *Pac. Molasses Co.*, 356 F.2d at 389-90. And, to be clear, it is not true. By refusing to create an HMAP, the public has not been afforded the opportunity, through a public scoping process, to participate in the development of HMA goals. *See* Pls.' Motion at p. 2:8-10. Had BLM created an HMAP, Plaintiffs would not only have addressed the impact of livestock grazing on herds in the Complex, but also they would have commented on the Pancake Complex's early foaling season, considerations of weather for gather operations, considerations for ensuring gathers are conducted in a humane manner, the use of reversible PZP for fertility control, rewilding as an alternative management strategy, considerations related to rare genetic lineages present in the Complex, and more. WHE Decl. at ¶¶19-25; CHE Decl. at ¶¶6-8; AWA Decl.¶¶11, 13-15; and CANA Decl. at ¶¶10-11, 15-18. By refusing to create an HMAP, BLM can ignore all of these considerations or make determinations about them without public input.

### E. Defendants Did Not Take a "Hard Look" at the Consequences of Its Gather Plan

By proceeding to remove horses without first creating an HMAP, BLM undertook management action without considering all factors relevant to herd health. Moreover, it undertook a NEPA review that was arbitrarily limited in scope. Defendants analysis does not constitute the "hard look" required under NEPA. *See* 42 U.S.C. §4332(E); 40 C.F.R. §1508.9; *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 371 (1989). Defendants opposition to Plaintiffs' Motion for Summary Judgment does not establish otherwise. Instead, Defendants make sweeping generalizations that fail to address the specific issues raised by Plaintiffs.

For example, Plaintiffs note that members of the public asked BLM to consider recommendations made in the National Research Council's report, "Using Science to Improve the BLM Wild Horse and Burro Program: A Way Forward." *See* Pls.' Motion at p. 33:4-16. In that report, the authors noted BLM management practices, which include regularly removing horses from public lands, can actually cause high horse population growth rates. *See id.* Defendants never responded to public comment on this issue, and they ignore it in their opposition papers. Similarly, as regards impacts of horse removal on wildfire risks, Plaintiffs point out that BLM did respond to public comment; however, neither the response nor the Gather-EA actually contain any analysis of the matter. *See id.* at pp. 33:17-34:11. Defendants' opposition does not address this specific point.

### III. Conclusion

BLM adopted regulations to implement the WHA with the intent of clarifying the management procedures of the Bureau of Land Management as they affect the public. See 49 Fed. Reg. 49252 at Summary on p. 49252, attached as Exh. F to RJN. Toward this end, the regulations require BLM to create and consider both land use plans *and* HMAPs prior to engaging in population management choices. *See* 43 C.F.R. §§4710.3-1, 4710.4. By adopting these management procedures, the public is allowed a meaningful opportunity to participate in the scope and substance of HMA goals, thereby meeting the intent of the regulations.

BLM also failed to meet the requirement of NEPA insofar as it ignored key issues, refused to consider important data, and failed to provide the basis for its analysis.

Plaintiffs therefore request that their motion for summary judgment be granted.

DATED:	November 14, 2023	Respectfully Submitted,

<u>s/ Danielle M. Holt</u>
Danielle M. Holt
(Nevada Bar No. 13152)
DE CASTROVERDE LAW GROUP
1149 S Maryland Pkwy
Las Vegas, NV 89104
(702) 222-9999
danielle@decastroverdelaw.com

<u>/s/ Jessica L. Blome</u>
Jessica L. Blome
(Cal. Bar No. 314898, admitted pro hac vice)
GREENFIRE LAW, PC
2748 Adeline Street, Suite A
Berkeley, CA 94703
(510) 900-9502
jblome@greenfirelaw.com

*Attorneys for Plaintiffs*