TODD KIM, Assistant Attorney General
S. JAY GOVINDAN, Section Chief
BRIDGET K. MCNEIL, Assistant Section Chief
CHRISTIAN H. CARRARA (NJ Bar No. 317732020)
SAMANTHA G. PELTZ (IL Bar No. 6336536)
U.S. Department of Justice
Environment and Natural Resources Division
Wildlife and Marine Resources Section, Natural Resources Section
P.O. Box 7611
Washington, DC 20044
Phone: (202) 598-9736 (Carrara)
Fax: (202) 305-0275
Email: christian.carrara@usdoj.gov

*Attorneys for Federal Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| ANIMAL WELLNESS ACTION, a non-profit corporation, CANA FOUNDATION, a non-profit corporation, THE CENTER FOR A HUMANE ECONOMY, a non-profit corporation, LAURA LEIGH, individually, and WILD HORSE EDUCATION, a non-profit corporation, | Case No: 3:22-cv-00034-MMD-CLB |
| *Plaintiffs,* | **FEDERAL DEFENDANTS' SUPPLEMENTAL RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT IN ACCORDANCE WITH THIS COURT'S FEBRUARY 22, 2024 ORDER (ECF No. 77)** |
| *v.* | |
| UNITED STATES DEPARTMENT OF INTERIOR, BUREAU OF LAND MANAGEMENT, and JON RABY, Nevada State Director of the Bureau of Land Management, | |
| *Defendants.* | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

DISCUSSION .................................................................................................................... 1

   A.   The First and Second *TRAC* Factors Do Not Support a Finding of Unreasonable Delay.

   …………………………………………………………………………………………..2

     1.   The Statutory and Regulatory Schemes of the Wild Horse Act Do Not Require the

       Preparation of HMAPs Before Gathers. .................................................................... 2

     2.   Plaintiffs' Arguments on the First and Second *TRAC* Factors Do Not Demonstrate

       Unreasonable Delay Warranting Judicial Intervention ............................................. 6

   B.   The Third And Fifth *TRAC* Factors Do Not Support A Finding Of Unreasonable Delay

     Justifying the Issuance of Equitable Relief .................................................................... 7

   C.   An Order Requiring BLM To Prepare an HMAP Before Gathers Will Unduly Disrupt

     BLM's Ability To Immediately Remove Excess Animals As Required Under the Wild

     Horse Act. ...................................................................................................................... 9

CONCLUSION .............................................................................................................. 10

# TABLE OF AUTHORITIES

**Case**                                                                                    **Page**

*Cloud Found. v. BLM*,
   No. 3:11-CV-00459-HDM-VPC, 2013 WL 1249814 (D. Nev. Mar. 26, 2013) ..................... 4

*Ctr. for Biological Diversity v. BLM*,
   35 F. Supp. 3d 1137 (N.D. Cal. 2014) ........................................................................ 8

*Ctr. for Cmty. Action & Env't Just. v. BNSF Ry. Co.*,
   764 F.3d 1019 (9th Cir. 2014) ................................................................................... 4

*Friends of Animals v. BLM*,
   548 F. Supp. 3d 39 (D.D.C. 2021) ............................................................................. 5

*Friends of Animals v. Pendley*,
   523 F. Supp. 3d 39 (D.D.C. 2021) ............................................................................. 5

*Indep. Mining Co., Inc. v. Babbitt*,
   105 F.3d 502 (9th Cir. 1997) ................................................................................. 3, 7

*In re A Cmty. Voice*,
   878 F.3d 779 (9th Cir. 2017) ..................................................................................... 5

*In re Barr Lab'ys, Inc.*,
   930 F.2d 72 (D.C. Cir. 1991) .................................................................................... 7

*In re Nat. Res. Def. Council, Inc.*,
   956 F.3d 1134 (9th Cir. 2020) ............................................................................... 1, 2

*Jamul Action Comm. v. Chaudhuri*,
   651 F. App'x 689 (9th Cir. 2016) ............................................................................... 1

*Nat'l Wildlife Fed'n v. Cosgriffe*,
   21 F. Supp. 2d 1211 (D. Or. 1998) ............................................................................ 8

*Nio v. U.S. Dep't of Homeland Sec.*,
   270 F. Supp. 3d 49 (D.D.C. 2017) ............................................................................ 4

*Norton v. S. Utah Wilderness*,
   All., 542 U.S. 55 (2004) ........................................................................................... 1

*Romo v. Barr*,
   933 F.3d 1191 (9th Cir. 2019) ................................................................................... 5

*Sierra Club v. Gorsuch,*
  715 F.2d 653 (D.C. Cir. 1983) ............................................................... 1

*Sierra Club v. Thomas,*
  828 F.2d 783 (D.C. Cir. 1987) ............................................................... 3

*Telecommunications Research & Action Center v. FCC,*
  750 F.2d 70 (D.C. Cir. 1984) ..................................................... 1, 2, 3

*Vaz v. Neal,*
  33 F.4th 1131 (9th Cir. 2022) ........................................................ 4, 10

**Statutes**

5 U.S.C. § 706(1) .................................................................................. 1, 10

16 U.S.C. § 1331 ......................................................................................... 8

16 U.S.C. § 1333(a) .................................................................................... 9

16 U.S.C. § 1333(b)(2) .......................................................................... 3, 5

**Regulations**

43 C.F.R. § 4710.3-1 .................................................................................. 4

43 C.F.R. § 4710.4 ...................................................................................... 4

51 Fed. Reg. 7,410 (Mar. 3, 1986) ........................................................ 4, 5

1

**INTRODUCTION**

2       On February 22, 2024, this Court ordered Federal Defendants to "file a supplemental

3 response to Plaintiffs' Motion for Summary Judgment addressing the six-factor test under

4 *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 79-80 (D.C. Cir. 1984)

5 ("*TRAC*"), by March 7, 2024." In accordance with that order, Federal Defendants file this

6 supplemental response. As explained below, Plaintiffs' argument that the Bureau of Land

7 Management ("BLM") unreasonably delayed preparing a Herd Management Area Plan

8 ("HMAP") in violation of 5 U.S.C. § 706(1) lacks merit.

9

**DISCUSSION**

10       Under the Administrative Procedure Act ("APA"), a court may "compel agency action

11 ... unreasonably delayed[.]" 5 U.S.C. § 706(1). But a claim under § 706(1) can proceed "only

12 where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required*

13 *to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). And even then, the Ninth

14 Circuit has made clear that the issuance of equitable relief under Section 706 of the APA is an

15 "extraordinary remedy" that is "justified only in exceptional circumstances[.]" *In re Nat. Res.*

16 *Def. Council, Inc.*, 956 F.3d 1134, 1138 (9th Cir. 2020) (cleaned up). Thus, a finding of

17 unreasonable delay is appropriate only upon a showing that the delay is "egregious." *Id.* These

18 principles are borne out of the recognition that, "[a]bsent a precise statutory timetable or other

19 factors counseling expeditious action, an agency's control over the timetable of [its action] is

20 entitled to considerable deference." *Jamul Action Comm. v. Chaudhuri*, 651 F. App'x 689, 689-

21 90 (9th Cir. 2016) (quoting *Sierra Club v. Gorsuch*, 715 F.2d 653, 658 (D.C. Cir. 1983));

22 *accord Sierra Club*, 715 F.2d at 659 ("our review of delayed action …[is] limited to examining

23 an agency's reasons for deferred action and determining whether that delay is inconsistent with

24 the agency's discretion under the applicable statutory scheme").

25       Consistent with these principles, the Ninth Circuit has adopted the now familiar six-part

26 *TRAC* factors for determining whether an agency's delay in completing a required action is so

27 egregious or "unreasonable" as to warrant equitable relief:

28

(1) the time agencies take to make decisions must be governed by a "rule of reason";

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re Nat. Res. Def. Council, Inc.*, 956 F.3d at 1138-39 (quoting *TRAC*, 750 F.2d at 80)

(cleaned up). Application of these factors here demonstrates that Plaintiffs have failed to show

that BLM is required to prepare an HMAP before conducting a gather—and so, it could not

have unreasonably delayed doing so.[1] Moreover, considering the statutory and regulatory

contexts, BLM's 2022 gather of wild horses on the Pancake Complex ("2022 Gather") without

an HMAP cannot be deemed an "unreasonable delay" of the general requirement to prepare an

HMAP and certainly does not warrant judicial intervention by this Court.

### A. The First and Second *TRAC* Factors Do Not Support a Finding of Unreasonable Delay.

#### 1. The Statutory and Regulatory Schemes of the Wild Horse Act Do Not Require the Preparation of HMAPs Before Gathers.

---

[1] Although the Court has ordered Federal Defendants to address the six-factor test under *TRAC* and Plaintiffs' relevant arguments, Federal Defendants maintain, as explained below, that Plaintiffs have failed to establish that a legal obligation exists for BLM to prepare an HMAP *prior to conducting a gather*. *See* Mem. in Supp. of Fed. Defs.' Cross-Mot. for Summ. J. and in Opp'n. to Pls.' Mot. for Summ. J. ("Fed. Defs.' Br."), 26-28, ECF No. 70. To the extent that Plaintiffs now argue they are challenging BLM's general duty to prepare an HMAP, Pls.' Opp. to Defs.' Cross-Mot. for Summ. J. and Reply in Supp. of Pls.' Mot. for Summ. J., 13, ECF No. 71, Federal Defendants maintain that Plaintiffs cannot change their unreasonable delay claim to keep their argument alive. *See* Fed. Defs.' Reply in Supp. of their Cross-Mot. for Summ. J. (ECF No. 70) ("Fed. Defs.' Reply"), 18-19, ECF No. 73.

The first and second *TRAC* factors are often considered together in that the statutory scheme often gives context to the "rule of reason." *TRAC*, 750 F.2d at 80; *Indep. Mining Co., Inc. v. Babbitt*, 105 F.3d 502, 507 n.7 (9th Cir. 1997). "It is well established that . . . the reasonableness of the delay must be judged in the context of the statute which authorizes the agency's action." *Sierra Club v. Thomas*, 828 F.2d 783, 797 (D.C. Cir. 1987) (cleaned up). Here, consideration of the first two *TRAC* factors demonstrates that BLM was not under a statutory or regulatory requirement to prepare an HMAP prior to conducting the 2022 Gather. Thus, BLM could not have unreasonably delayed doing so. Further, even considering BLM's general requirement under its regulations to prepare an HMAP, BLM's decision to conduct the 2022 Gather without an HMAP is not unlawful and does not constitute unreasonable delay.

There is no requirement in the Wild Free-Roaming Horses and Burros Act ("Wild Horse Act") for BLM to prepare an HMAP, much less a requirement to prepare an HMAP before conducting a gather. Plaintiffs do not identify any text in the Wild Horse Act to rebut this. Fed. Defs.' Br. at 20.[2] What is clear from the Wild Horse Act is the unequivocal mandate that, where BLM makes the two-part determination that an overpopulation exists and action is necessary to remove excess animals based on information currently available to it, BLM "shall immediately remove excess animals from the range so as to achieve appropriate management levels." 16 U.S.C. § 1333(b)(2). The Wild Horse Act expressly lists the information BLM may use to determine that a wild horse overpopulation exists in a specific area, which includes: (i) the inventory of federal public land, (ii) land use plans, (iii) information from environmental impact statements, and (iv) the inventory of wild horses. *Id*. But, "in the absence of the information contained in (i–iv)[,]" BLM is expressly authorized to proceed with the removal of horses on the basis of whatever information BLM has at the time of the decision that an overpopulation exists. *Id*. The legislative history affirms this understanding of the Wild Horse Act as Congress added this language to clarify that BLM's findings of excess wild horse overpopulations—and resultant gathers—"should not be overturned quickly on the ground that

---

[2] This brief references the ECF-generated page numbers for court filings.

they are predicated on insufficient information." *See Cloud Found. v. BLM*, No. 3:11-CV-00459-HDM-VPC, 2013 WL 1249814, at *5 (D. Nev. Mar. 26, 2013) (cleaned up); *see also* Fed. Defs.' Br. at 20-21 (discussing the 1978 amendments). Thus, the Wild Horse Act does not provide any such requirement, much less a timetable, for BLM to prepare an HMAP.

By comparison, BLM's regulations implementing the Wild Horse Act do contemplate the preparation of HMAPs, but the regulations provide no timeframe in which an HMAP must be prepared. But while the applicable regulatory provision, 43 C.F.R. § 4710.3-1, directs BLM to prepare an HMAP, it neither requires preparation of an HMAP before BLM authorizes a gather nor does it provide any timetable for BLM to do so. *See Vaz v. Neal*, 33 F.4th 1131, 1138 n.6 (9th Cir. 2022) ("The second *TRAC* factor is inapplicable because the regulations provide no timetable for the [action]."). The provision merely states that "[m]anagement shall be at the minimum level necessary to attain the objectives identified in approved land use plans and [HMAPs]." 43 C.F.R. § 4710.4. As explained in Federal Defendants' previous briefs, Section 4710.4 places a requirement on BLM to tier management to objectives in *approved* land use plans and HMAPs. Fed. Defs.' Br. at 22-23. The two regulations cannot be read together to create a duty to prepare an HMAP before a gather where none exists. *See Ctr. for Cmty. Action & Env't Just. v. BNSF Ry. Co.*, 764 F.3d 1019, 1024 (9th Cir. 2014) (declining to adopt the plaintiffs' interpretation, which, "would effectively be to rearrange the wording of the statute—something that we, as a court, cannot do").

Moreover, adopting Plaintiffs' interpretation would thwart the regulatory scheme. *See* Pls.' Notice of Mot. for Summ. J. ("Pls.' Br."), 30, ECF No. 64; *see also Vaz*, 33 F.4th at 1138 n.6 (looking to the regulations for context for the rule of reason); *accord Nio v. U.S. Dep't of Homeland Sec.*, 270 F. Supp. 3d 49, 66 (D.D.C. 2017) (the second *TRAC* factor is informed by the applicable regulatory schemes). The preamble to the final rule promulgating BLM's wild horse and burro regulations describes how Section 4710.4 was changed to "make clear" that management will be "undertaken with the objective of limiting animal distribution to herd areas by controlling herd size to prevent habitat from being overpopulated." 51 Fed. Reg. 7410,

7412 (Mar. 3, 1986). Thus, this update to the regulations identified a management tool to seek to prevent overpopulation; it did not create, or intend to create, a timetable for preparing HMAPs before gathers or supersede the controlling language from the statute requiring BLM to gather and remove excess wild horses. *See id*. at 7410 (explaining, "[t]he language of the statute will govern management"). This is further evinced by the summary of the final rule, which explains that the changes are "to reduce the regulatory burden on the public, to clarify the management procedures of [BLM] as they affect the public, to remove unnecessary provisions, and to improve the organization of the regulations." *Id*. Plaintiffs' interpretation of the regulations contradicts these purposes.[3] Requiring BLM to prepare an HMAP before a gather would increase the regulatory burden on BLM, create confusion where Congress and the agency have spoken clearly, and potentially lead to greater overpopulation problems where BLM cannot remove excess animals immediately.[4] *See, e.g.*, *infra* 8-9. The Court should reject such a reading of the regulations that would bely the rule of reason. *See Romo v. Barr*, 933 F.3d 1191, 1198 (9th Cir. 2019) (rejecting interpretation that would create absurd results).[5]

Thus, as the evidence shows here, BLM was not required to prepare an HMAP before conducting the 2022 Gather and so it could not have "unreasonably delay[ed] that which it is not required to do[.]" *In re A Cmty. Voice*, 878 F.3d 779, 784 (9th Cir. 2017). Requiring BLM to

---

[3] Notably, Plaintiffs do not address this language in the final rule. *See* Pls.' Br. at 25-26.

[4] Plaintiffs' interpretation could put BLM in a position of unreasonably delaying action that Congress has spoken clearly to: the need to "immediately" remove animals after the agency determines an overpopulation exists and action necessary to do so. 16 U.S.C. § 1333(b)(2). If BLM instead took the position that it could only conduct a removal after preparing an HMAP, the agency would risk a more colorable 706(1) claim than the one brought in this case.

[5] Indeed, adjudicative bodies have rejected this reading of the statute and regulations and found that "it is not necessary that BLM prepare an HMAP as a basis for ordering the removal of wild horses, so long as the record otherwise substantiates compliance with the [Wild Horse Act]." *Animal Prot. Inst. of Am.,* 109 IBLA 112, 127 (1989); *accord Friends of Animals v. BLM*, 548 F. Supp. 3d 39, 67 (D.D.C. 2021); *Friends of Animals v. Pendley*, 523 F. Supp. 3d 39, 56 n.3 (D.D.C. 2021). Importantly, the Interior Board of Land Appeals rejected the very argument that Plaintiffs put forth here and found that the regulations "do[] not require preparation of an HMAP as a prerequisite for a removal action." *Compare Animal Prot. Inst. of Am.,* 109 IBLA at 127, *with* Pls.' Br. at 33; *see also* Fed. Defs.' Reply at 15.

1    do so would frustrate the statutory and regulatory schemes, contrary to the rule of reason. The

2    first and second *TRAC* factors thus weigh heavily against an unreasonable delay finding.

3        **2.    Plaintiffs' Arguments on the First and Second *TRAC* Factors Do Not**
        **Demonstrate Unreasonable Delay Warranting Judicial Intervention.**

4

5        Plaintiffs present primarily two arguments on the first and second *TRAC* factors; neither

6    of which advance their cause. First, Plaintiffs contend that BLM refused to create an HMAP

7    despite the public asking it to do so. Pls.' Br. at 32. Second, Plaintiffs suggest that because

8    BLM created the Fifteenmile HMAP, the agency can create one before instituting a gather plan

9    here. *Id*. In essence, Plaintiffs contend that BLM lacks an identifiable rationale for the

10   purported delay. This argument lacks merit.

11       First, BLM has neither refused to create an HMAP nor has it "refused to explain why it

12   has not created one[,]" as Plaintiffs claim. *Id*. In responding to comments submitted on the

13   Pancake Complex decision arguing that BLM should not authorize a gather without the

14   information included in an HMAP, *see, e.g.*, AR_03661, BLM explained "[t]he scope of the

15   Pancake Complex [Environmental Assessment] is to restore a [thriving natural ecological

16   balance] and multiple use relationship on the public lands consistent with the [Wild Horse

17   Act's requirement] to remove excess wild horses from within and outside the Complex[.]" *Id*.

18   BLM further explained the documents it relied on to inform the excess determination and

19   gather. *Id*. The agency did not simply refuse to explain why an HMAP was not prepared—

20   BLM responded to the thrust of the comments and provided the documents it relied on for

21   short- and long-term management objectives, consistent with the Wild Horse Act. *See* Fed.

22   Defs.' Br. at 29-30; *see also id*. at 13-16 (discussing the planning documents relied on). Thus,

23   this argument fails to show BLM acted unreasonably.

24       Plaintiffs' second argument fares no better. Plaintiffs suggest that because BLM

25   prepared the Fifteenmile HMAP—a plan for a different herd in a different state—the agency

26   could have prepared one before the 2022 Gather here. Pls.' Br. at 32. Along with the

27   Fifteenmile HMAP being inadmissible and irrelevant here, *see* Fed. Defs.' Resp. to Pls.' Mot.

28

for Jud. Not. (ECF No. 65), ECF No. 68, its existence does not undermine BLM's rationale for not preparing an HMAP before conducting the 2022 Gather. As explained previously, there are many differences between the Pancake Complex and Fifteenmile herd management area. *See id.* at 5-6. In addition, the 2019 Fifteenmile HMAP replaced the 1985 version, so it made sense for BLM to update the HMAP, as one already existed. *See* Fifteenmile Herd Management Area Plan Update and Wild Horse Gather Environmental Assessment (November 2018), at 9, https: //eplanning.blm.gov/public_projects/nepa/103350/165483/201860/Fifteenmile_EA_FINAL_01 282019.pdf (last visited Mar. 7, 2024). In contrast, the relevant information for the Pancake Complex is contained in existing land use plans, Final Multiple Use Decisions, and a Wild Horse Territory Management Plan. Fed. Defs.' Br. at 13. Thus, BLM's reliance on those documents for the 2022 Gather, which contain the same information that an HMAP would, was eminently reasonable given the circumstances. And so, Plaintiffs' contention that since BLM updated the Fifteenmile HMAP—which was already in existence and concerned a different area than the Pancake Complex—before a gather does not prove that either the first or second *TRAC* factor favor Plaintiffs' arguments challenging the Pancake Complex gather decision.

In sum, Plaintiffs fail to show that the Wild Horse Act or its implementing regulations require BLM to prepare an HMAP before conducting a gather. Even considering the regulatory requirement to prepare an HMAP, the rule of reason weighs heavily against finding that BLM unreasonably delayed action by not preparing one before conducting a gather, and Plaintiffs' arguments fail to rebut this. Considering the statutory and regulatory text, and context, the first and second *TRAC* factors decidedly favor BLM.

**B. The Third And Fifth *TRAC* Factors Do Not Support A Finding Of Unreasonable Delay Justifying the Issuance of Equitable Relief.**

The third and fifth *TRAC* factors regarding any impacts to human health and welfare, and the nature and extent of interests prejudiced by the delay, often overlap. *Indep. Mining Co., Inc.*, 105 F.3d at 509; *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991). The third *TRAC* factor is not in play, as human lives are not at stake. And for the fifth *TRAC* factor,

1    Plaintiffs do not convincingly identify any interests that are harmed by not preparing an HMAP

2    before gathers since management is ensured at the minimal feasible level by other management

3    standards and tools. *See* Fed. Defs.' Br. at 18-19, 27 (explaining the documents and processes

4    governing the 2022 Gather); *see also Ctr. for Biological Diversity v. BLM*, 35 F. Supp. 3d

5    1137, 1154 (N.D. Cal. 2014), *aff'd*, 833 F.3d 1136 (9th Cir. 2016) (finding that failure to issue

6    a recovery plan for an endangered plant species "does not involve human health and welfare").

7    And so, the third and fifth factors do not support a finding of unreasonable delay.

8         Plaintiffs contend that the Wild Horse Act's "main interest is to protect wild horses" as

9    "an integral part of the natural system of the public lands" and that by not creating an HMAP

10   for the Pancake Complex, BLM did not consider the full range of management options

11   available to protect wild horses. *See* Pls.' Br. at 32 (quoting 16 U.S.C. § 1331). Plaintiffs

12   contend that the delay, therefore, goes against the interests specifically elucidated by Congress.

13   *Id*. While it is true that the public can have a significant interest in agency management that

14   promotes "such important values as wildlife, scenery, cultural resources, and recreational

15   opportunities[,]" *Nat'l Wildlife Fed'n v. Cosgriffe*, 21 F. Supp. 2d 1211, 1219 (D. Or. 1998),

16   considering these interests here does not tip the scale in favor of Plaintiffs.

17        To the contrary, Congress mandated BLM to immediately remove excess wild horses

18   once an excess determination has been made in recognition that excess numbers of wild horses

19   and burros "pose a threat to themselves and their habitat and to other rangeland values[.]" H.R.

20   Rep. No. 95-1122, 23 (1978). Congress thus acknowledged that while wild free-roaming

21   horses and burros should be protected, "at the same time" excess animals need to be removed

22   in order to maintain a thriving natural ecological balance for all species—including horses. *Id*.

23        As for the Pancake Complex, BLM determined that excess wild horses were causing

24   "[m]oderate, heavy and severe utilization . . . on key forage species within [the] Complex[,]"

25   that emergency removals were necessary in the recent past and would be necessary in the

26   future due to lack of water and/or forage if the wild horse population is not reduced, and that a

27   gather was needed to prevent undue or unnecessary degradation of the public lands and to

28

1    restore a thriving natural ecological balance. AR_03504. Thus, immediate removal of excess

2    animals was necessary to protect the important values of wildlife, scenery, cultural resources,

3    and recreational opportunities. This includes the protection of wild horses, which Congress

4    expressly identified as a threat to themselves when their numbers exceed the appropriate

5    management level. H.R. Rep. No. 95-1122, 23 (1978). And so, Plaintiffs' suggestion that the

6    removal of excess horses before the creation of an HMAP somehow prejudices wild horses or

7    public lands more generally does not withstand scrutiny.

8         Plaintiffs' argument that conducting the 2022 Gather prior to creating an HMAP

9    prejudiced wild horses in that BLM did not consider every management option available fares

10   no better. Pls.' Br. at 32. The Wild Horse Act does not require the consideration of every

11   management option nor do Plaintiffs explain how, exactly, the failure to do so would be

12   prejudicial. The Wild Horse Act requires that all management activities be at the "minimal

13   feasible level." 16 U.S.C. § 1333(a). BLM relied on resource management plans, the

14   environmental assessment, and Wild Horse and Burro Comprehensive Animal Welfare Program

15   standards to ensure that the 2022 Gather was at the minimal feasible level. Fed. Defs.' Br. at

16   29-30. Thus, the third and fifth factors weigh decidedly against an unreasonable delay finding.

17   **C. An Order Requiring BLM To Prepare an HMAP Before Gathers Will Unduly**
18   **Disrupt BLM's Ability To Immediately Remove Excess Animals As Required**
     **Under the Wild Horse Act.**

19        There can little doubt that the fourth *TRAC* factor—the effect of expediting delayed

20   action on agency activities of a higher or competing priority— counsels against a finding of

21   unreasonable delay warranting equitable relief. Plaintiffs state they are "unaware of any

22   negative effect associated with compelling BLM to create an HMAP[,]" Pls.' Br. at 32, but this

23   is unsupported by the record. As chronicled in detail, along with the Wild Horse Act mandating

24   that BLM remove excess wild horses immediately, *supra* at 3, the delay in doing so could have

25   drastic effects on public lands. *See also* AR_3502 (explaining that wild horses can increase

26   their numbers by up to 25% annually, which requires BLM to use discretion in managing

27   herds); AR_3521 (the failure to control overpopulation can lead to increased competition for

28

resources, which could lead to death of individual animals and the deterioration of habitat conditions). Indeed, BLM explained in the environmental assessment that, without the 2022 Gather, "[t]he presence of increasing numbers of excess wild horses will continue to deteriorate rangelands within the Complex, public safety concerns will increase along heavily traveled road as well as private property issues, and an increase in emergency actions will be necessary to address the overpopulations of wild horses and limited water/forage resources." AR_03507; *see also* Declaration of Benjamin F. Noyes, ECF No. 18-1 ¶¶ 9-10 (emergency gathers in 2016, 2018, and 2020 were required to address these issues within the Complex). Plaintiffs, however, do not address any of these effects on public lands, resources, or wild horses. The Court should summarily reject Plaintiffs' contention as without merit.

Finally, regarding the sixth *TRAC* factor, Plaintiffs neither allege any agency impropriety nor can there be a finding of impropriety as there is no requirement that the agency has delayed completing. *See Vaz*, 33 F.4th at 1138 n.6 (finding the sixth *TRAC* factor "irrelevant because there is no evidence that the [agency] has engaged in any improper conduct").

In sum, each *TRAC* factor weighs in favor of BLM and against finding that there has been an unreasonable delay. Plaintiffs point to no statutory requirement for the agency to prepare an HMAP before a gather and the Court should reject their attempt to rewrite the regulations in contravention of the statutory and regulatory context to create a requirement where none exists. Accordingly, the Court should reject Plaintiffs' argument that BLM unreasonably delayed agency action in violation of 5 U.S.C. § 706(1).

## **CONCLUSION**

For these reasons, Federal Defendants ask the Court to grant their cross-motion for summary judgment and deny Plaintiffs' motion for summary judgment.

Respectfully submitted this 7th day of March, 2024.

TODD KIM
Assistant Attorney General

U.S. Department of Justice
Environment & Natural Resources Division
S. JAY GOVINDAN, Section Chief
BRIDGET K. MCNEIL, Assistant Section Chief

*/s/  Christian Carrara*
CHRISTIAN CARRARA, Trial Attorney
(NJ Bar No. 317732020)
Wildlife & Marine Resources Section

*/s/  Samantha Peltz*
SAMANTHA PELTZ, Trial Attorney
(IL Bar No. 6336536)
Natural Resources Section
Ben Franklin Station
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 598-9736 (Carrara)
Fax: 202-305-0275
Christian.carrara@usdoj.gov

*Of Counsel:*
Janell M. Bogue
U.S. Dep't of the Interior
Office of the Solicitor
Pacific Southwest Region

*Attorneys for Federal Defendants*

1

**CERTIFICATE OF SERVICE**

2

      I hereby certify that on March 7, 2024, I electronically filed the foregoing document with

3

the Clerk of the Court for the United States District Court for the District of Nevada using the

4

Court's CM/ECF system. Participants in the case who are registered CM/ECF users will be

5

served by the appellate CM/ECF system, which includes counsel of record for all parties in the

6

case.

7

8

                                    */s/ Christian Carrara*
                                      CHRISTIAN CARRARA

9

                                      Attorney for Defendants

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28